The lower court, in a well written opinion, has set out the issues in this case and found the facts upon which it based its conclusions. It is as follows:
"This is a suit by the widow of Charlie Hester for judgment under the Compensation Law of Louisiana in the amount claimed for the death of her husband which occurred while in defendant's employ. No dependents were left by decedent other than plaintiff.
"The facts are not disputed except the cause of death. Defendant contends that Charlie Hester sustained no injury while in the employ of defendant and hence defendant is not liable under the Workmen's Compensation Law of Louisiana.
"The facts show that Hester had been in the employ of defendant for more than 20 years and for several years next preceding the date of his death had been a boiler maker and had been doing general repair work of that kind. For several days preceding the day of his death on February 5, 1942, he had been repairing a boiler and on the day of his death about 2:30 in the afternoon and for a day or two prior thereto had been and was riveting a boiler. He went to work at 8 o'clock in the morning of the day of his death and worked until noon. During the morning he complained to his helper that he was not feeling well. He went to his home during the noon hour but ate no lunch or dinner because he told his wife he was not feeling well. He returned to his work about 1:00 o'clock and worked until about 2:00 in the afternoon when he fell out and died within a few minutes thereafter.
"Hester was working in the fire box underneath the boiler with his helper bradding rivets with a heavy hammer used for that purpose. It was necessary for him and the helper to hold the hammer up against the rivet as it was being bradded from both sides by the same kind of hammer. There was a mechanic and a helper inside the boiler and when a rivet was heated it was brought to the parties inside the boiler and properly placed to be bradded by hammers from both sides of the boiler at the same time. One hammer, weighing about 30 pounds, was held by decedent and his helper from the fire box side of the boiler while the other hammer was held by the mechanic and his helper from the inside of the boiler against the rivet until fully bradded, which required from one and one-half to two minutes.
"After the rivet was bradded, the mechanics and their helpers would relax and rest for a brief period before beginning to brad the next rivet. Decedent and his helper were working from a lower position than the boiler and were apparently in a greater physical strain because they were required to hold the hammer above their heads for each rivet to be bradded until they had gotten from underneath the boiler until well around to the side and during the afternoon hour of work were bradding rivets underneath the boiler.
"They had driven about 20 or 25 rivets since the noon hour when they had to stop *Page 96 
and wait about 10 minutes for a new nipple to replace one which had given way and decedent and his helper were sitting down inside the fire box and decedent suddenly fell over unconscious across the lap of his helper who called that Mr. Hester has fallen out. Help came immediately and he was carried out of the fire box and then to the office of Dr. Scott, three or four hundred yards away, where he gasped one time and died before Dr. Scott could make an examination of his condition. He had gasped once before this while he was being carried out from the fire box where he had fallen.
"Three physicians testified as to the cause of death in their opinion, neither made an examination as to his condition before death and no post mortem was held, hence their opinion is based upon the history of the case only. Dr. Woodall, of Colfax, and Dr. Mosely, of Winnfield, testifying for plaintiff, were of the opinion Hester died from cerebral hemorrhage, caused or contributed to by the hard work he had been doing at the time he fell out. Death could have been caused by too heavy strain upon an impaired heart — a myocardinal failure of the heart — but the symptoms indicated it was cerebral hemorrhage. Dr. Scott, of Rochelle, testifying for defendant, gave as his opinion that decedent died of coronary thrombosis, which he explained as the blocking of the blood vessels that supply the heart itself.
"Decedent had not complained of any trouble or illness until the day of his death. It was not known if he had high blood pressure or any disease of the circulatory system or heart, although plaintiff testified that Dr. Scott told her about two weeks after the death of her husband that he was suffering with high blood pressure at the time of his death. This was denied, however, by Dr. Scott but admitted that he suggested to plaintiff that her husband may have had high blood pressure. Hester seldom ever consulted a physician about his physical condition. He was 56 years of age at the time of his death and weighed about 200 pounds. If the services rendered by decedent for the defendant caused or contributed or hastened his death, it would be such injury for which compensation might be recovered.
"Section 38 of Act 20 of 1914, as amended [Act No. 38 of 1918, § 1], defines INJURY and PERSONAL INJURIES to include only such injuries caused by violence to the physical structure of the body and such diseases or infections as naturally result therefrom.
"Considering the terms INJURY and PERSONAL INJURIES, the Court of Appeals, First Circuit, in the case of Wright v. Louisiana Ice Utilities Co. [14 La.App. 621,], 129 So. [436], 438, said:
"`We find no restriction in the use of the words "physical structure of the body." We take this term to mean the entire composition of the human body, the internal parts as well as the external, and of these certainly the heart is a most vital and important one. That violence can be done to the heart as well to any external member of the body, such as the eye, the wrist, or the leg, goes without saying, and that disease may result from injury to the heart, as well as infection may set in from a wound in the leg, is recognized as one of the weaknesses of the human body.'
"In the case of Ozbolt v. Weber-King Mfg. Co. [La.App.], 193 So. [383], 384, the Court of Appeal, First Circuit, citing the above case among others in support of its decision for plaintiff, said:
"`The fact that the job which the deceased was required to perform was one calculated to over-heating and exhaustion is shown by the fact that these firemen had to take a period off after these periodical firings in order to cool off and rest. To say that the deceased might have died suddenly at home or in any other place is merely entering the field of speculation.'
"The labor being performed by Hester for defendant was so heavy and hard and done under such strain that every time a rivet was bradded in the boiler all engaged in that operation had to relax and rest before undertaking to brad the next one. Then too, decedent with his helper was forced to hold the hammer they were using over their heads to brad underneath the boiler where they were working at the time of the death of decedent. After resting during the noon hour, Hester reported that he was feeling better but after working about an hour and a half in the afternoon, he fell out and died within a few minutes.
"It is therefore but natural to conclude from all the facts that the cause of feeling bad, as he expressed in the forenoon, was contributed to or increased by the heavy labor necessary to perform in the manner required for defendant and under which he gave down and died as he was being carried to the office of Dr. Scott. *Page 97 
"In the case of Robichaux v. Realty Operators [195 La. 70], 196 So. [23], 26, the Supreme Court of Louisiana discussed the word ACCIDENT in the following language:
"`It is not necessary that an accident should seem immediately to be something serious in order to come within the definition in Section 38 of Act No. 20 of 1914, as amended by Act No. 38 of 1918. The word "accident" is there defined as an unexpected or unforeseen event, happening suddenly or violently, with or without human fault, and producing at the time objective symptoms of an injury.'
"It is argued for defendant that there was no injury to Hester and defendant is not responsible for the claim of his widow under the Compensation Law of Louisiana. In support of this position we have been cited the following cases: Kirk v. E.L. Bruce Co. [La.App.], 190 So. 840; Stockman v. Tremont Lumber Co. [La.App.], 155 So. 30; Daniels v. Union Oil Mill Co., Inc. [La.App.] 161 So. [614], 615; Nickelberry v. Ritchie Grocery Co. [196 La. 1011],200 So. 330.
"We have read all of the above cases and find none of them to be in support of the facts of the case being considered.
"The Kirk case is claimed to be on all-fours with the present one. It differs very materially, however, in the fact that Kirk was not required to use any great amount of physical strain and no unusual exertion was necessary to perform his duties, hence the demands of plaintiff were rejected. As already recited in the case on trial, Hester was required to use a great deal of physical exertion and unusual strain to perform the duties for which he was employed.
"In the Stockman case plaintiff failed to show that an injury to decedent's leg caused his death which occurred about four months after the injury and hence the demands were denied. The facts are altogether different from the case at bar.
"In the Daniels case the widow claimed compensation for the death of her husband who was employed at a mill as yardman and who was found dead one afternoon in August. She claimed he died of excessive heat and over-exertion. The proof showed his work was unnecessarily light and the Court rejected her claim.
"In the Nickelberry case plaintiff asked for judgment because of a heart disease brought on by heavy lifting while in the employ of defendant. The proof showed that plaintiff's condition was the result of a disease of the heart which had its beginning a year or more back and hence his demands were rejected.
"For reasons herein given, we think plaintiff is entitled to judgment in her favor and against the defendant for compensation as prayed for, except the claim of $150.00, which will be disallowed; all costs to be paid by defendant including expert witness fees of Dr. Woodall and Dr. Mosely which will be fixed at $25.00 each.
"Judgment will be rendered and signed in accordance with the reasons herein given."
From a judgment signed in accord with the above opinion, defendant is prosecuting this appeal. It did not ask for a re-hearing or new trial below.
In this court defendant complains of the judgment of the lower court as a whole and particularly of that part of it which fixed the fees of the medical witnesses without a rule to fix fees having been first filed and tried, and in that the judgment fixed the date of the first weekly paying of compensation on February 5, 1942, the date of the death of Charles Hester, instead of one week later. This last complaint is well founded as the judgment should have fixed the first payment as of February 12, 1942.
As to the first complaint, defendant did not in the lower court and does not now contend that the medical witness fees fixed were excessive or not due as such. Its only complaint is that they were fixed without a rule having been first filed and tried. The law governing the fixing of fees of medical witnesses is Subsection 4 of Section 18 of Act No. 85 of 1926, amending Act No. 20 of 1914, as amended and reenacted by Acts Nos. 234 and 247 of 1920. This Section provides in part that the Judge of the lower court shall in his discretion award costs and when so awarded, the same costs may be taxed and collected as are allowed taxed and collected for like services in other civil proceedings; that the fees of medical witnesses shall be reasonable and are not to be allowed unless fixed in the judgment. It does not provide that the fees of medical witnesses can only be fixed after a rule to show cause has been filed. We find no error in the lower court fixing the fees of the medical witnesses. *Page 98 
The lower court rejected plaintiff's demands for $150 for expenses of burial of decedent for the reason the burial insurance carried by decedent took care of that expense. Plaintiff has not answered the appeal; therefore, we are not empowered to pass on that issue.
There is no serious controversy over the material facts of the case and the lower court has correctly set forth the principal facts in its opinion.
Defendant contends that decedent died of coronary thrombosis, which is the blocking of the blood vessels carrying the blood to the heart and which was not caused or aggravated by his work. Plaintiff contends that the death was due to a cerebral hemorrhage, caused by over exercise or strenuous work.
Three doctors testified in the case, one being of the opinion that the death was due to coronary thrombosis and two thought it was due to a cerebral hemorrhage. It is clear to us, from a reading of the record, that the doctor who was of the opinion the death was due to coronary thrombosis based his opinion upon an erroneous history of decedent's actions when he first had the fatal attack. He testified that coronary thrombosis would cause severe pain in the chest and had been informed that decedent had, when the attack occurred, groaned and put his hand to his chest or side. All the evidence is that decedent exclaimed "Oh!" and fell over in the lap of his fellow worker and that he did not raise his hands. He died about ten minutes later without regaining consciousness.
The two doctors who were of the opinion decedent's death was due to a cerebral hemorrhage based their opinion upon the true facts as were testified to in court. None of the doctors made any examination of decedent before he died and no autopsy was held. The preponderance of the testimony is therefore with the plaintiff on this issue. However, the same preponderance of testimony is that the kind of labor being performed by decedent could aggravate and cause death, even though he was affected with coronary thrombosis and not a cerebral hemorrhage. It is a well established fact that a cerebral hemorrhage does not as a rule cause death as quickly as a heart attack such coronary thrombosis and the fact that decedent lived for ten or more minutes after being stricken is one of the factors causing the doctors to believe it was a cerebral hemorrhage. Such a hemorrhage can be and often is caused by strenuous labor such as decedent was performing.
All of the doctors thought decedent had high blood pressure although none of them had examined him, and if so the natural result from the strenuous labor in which he was engaged would be a cerebral hemorrhage and death.
We are of the opinion the facts in this case justify a judgment for plaintiff. The facts as found by the lower court are correct and we fully agree with its application of the law thereto.
The judgment of the lower court is amended so as to make the first weekly payment due February 12, 1942, instead of February 5, 1942, and as amended, the judgment is affirmed with costs.