Clyde H. Waller died on October 18, 1948, while in the discharge of his duties as warehouse foreman of the defendant, Stone Webster Engineering Corp.
His widow, Mrs. Bessie L. Woodward Waller, alleging that the death of her husband was caused by a cerebral hemorrhage, brought about by his heavy and strenuous duties as said warehouse foreman, while employed by defendant, brings this action *Page 873 
demanding workmen's compensation for herself as surviving dependent widow.
The defense was to the effect that although the death occurred while decedent was employed in defendant's warehouse, it was not caused by any accident within the terms of the Workmen's Compensation Act, Act No. 20 of 1914, as amended, and that, therefore, the widow is not entitled to workmen's compensation.
The District Court rejected the demands of plaintiff and dismissed the suit, and from the judgment, she has appealed.
The preponderance of the evidence is to the effect that the decedent was employed in a supervisory position under the title of foreman in defendant's warehouse, with three manual laborers working under him. His main duties consisted of checking goods placed or delivered by his fellow-employees and under his direction. It was not part of his regular duties to perform any of this manual labor himself, but there is some evidence to the effect that at times he assisted the laborers in moving goods, including some heavy machinery. It does not appear from the evidence, however, that these extra duties which he performed on occasions were strenuous, and were merely performed when he was shorthanded. The evidence is also to the effect that on the day of his death, Mr. Waller was in good spirits and appeared to be feeling very well. It is shown that a short time prior to his death, he picked up a flange to a meter which was in the aisle of the warehouse, and at that time, remarked that if the meter itself was not removed, someone would trip over it. The remark was made to his fellow-employee, Storey, one of the laborers, and Storey states that the other two laborers were not there at that time, and that a few minutes later Mr. Waller was found dead, slumped in a chair next to his desk in his office, and it was found that the meter had been moved some fifteen feet.
Plaintiff contends that under these facts, the remark made by Mr. Waller, plus the indication that he was the only one who could have moved the meter, that he did so and that his exertion in moving the meter (which weighed 54 lbs.), can be considered the cause of his cerebral hemorrhage or coronary occlusion, from which he died immediately thereafter. However, to us, the remark made by Mr. Waller indicates that he did not intend to and did not remove the meter.
It may be pointed out at this point that the warehouse in which Mr. Waller worked was a building about thirty-five by forty feet in dimension, and that there were two small offices in the building close to one another, one occupied by Mr. Waller, and the other by another supervisory employee of the defendant company. It is further shown that there were some thirteen people employed in this warehouse and that Mr. Waller's activities could be, and were, witnessed by these employees, and the preponderance of their testimony is to the effect that he performed very little, if any, manual labor. He had been seen just a few minutes prior to being found slumped in his chair in his office, and right afterwards, Dr. Dennis Casey was called, as well as Dr. J. W. Watson. Dr. Casey diagnosed the death as being caused by a coronary occlusion, and Dr. Watson, as being caused by a cerebral hemorrhage. These were the only two physicians to testify in the case, and there was no testimony adduced showing the physical condition of plaintiff prior to his death, such as to whether or not he suffered from hypertension or from arteriosclerosis, although Dr. Casey did testify that the most common cause of both cerebral hemorrhage and coronary occlusion is arteriosclerosis, along with, or without, hypertension. Both doctors admit that either a cerebral hemorrhage or a coronary occlusion could occur without any physical strain.
Plaintiff contends, first, that this court should find from the evidence that her deceased husband was engaged in heavy, arduous and strenuous work, and that as the accident occurred while he was employed in a hazardous occupation as defined by the Workmen's Compensation Act, his death is compensable under and within the terms of the act. Since the preponderance of the evidence is to the effect that the decedent had a supervisory position, and only engaged in manual labor *Page 874 
occasionally, although not required to do so, we cannot agree with plaintiff's first contention.
Plaintiff's second contention is that even should the court find that the decedent was not engaged in heavy, arduous or strenuous work, and that, therefore, for that reason, plaintiff should be denied relief, then it is submitted that such a requirement is beyond the scope and meaning of the compensation law. Counsel for plaintiff states in his brief: "By referring to the law, we do not find one single bit of legislation to support the contention that there must have been heavy, arduous or strenuous activity, before an award for compensation can be made." It is true that the law itself does not say what kind of activity must be shown, but it is further true, as shown by all our jurisprudence, that before an accident can be established, it must be shown that there was a causal connection between the employment activity and the resulting injury or death, and the jurisprudence is to the effect unless some specific act resulting in injury or death can be shown, or unless it be shown that the nature of the work itself was sufficiently strenuous, or the nature of the work, plus the conditions under which it was done, to cause injury or death, then no causal connection could be deemed established.
Act No. 20 of 1914, § 38, as amended, Act No. 38 of 1918, defines the word "accident" as being, "an unexpected or unforeseen event happening, suddenly or violently, with or without human fault and producing at the time objective symptoms of an injury." The section of the Act further provides that; "The terms 'Injury' and 'Personal Injuries' shall include only injuries by violence to the physical structure of the body and such diseases or infections as naturally result therefrom."
This case is similar to the case of Siscoe v. Cooley, et al., La. App., 9 So.2d 313, 314, except that in the cited case, the decedent was subjected to conditions much more apt to occasion his death than in the case at bar. In the Siscoe case, the decedent occupied the position of engineer with a steam laundry, and he was in charge of all mechanical work, and like the case at bar, his duties were primarily supervisory, the required heavy manual labor being performed by a Negro assistant.
For some days prior to his death, he experienced slight dizzy spells, they having occurred once or twice a week. Because of these, he consulted a physician, who found that he was suffering from high blood pressure. It may be noted that in the case at bar there is no showing that the decedent was suffering from high blood pressure. Decedent worked from 6:30 in the morning until 8:00 in the morning oiling the laundry's machinery, with the help of his assistant. During the remainder of the morning, decedent was engaged in testing rivets of a boiler by striking them with a one-pound hammer. At 1:10 in the afternoon, decedent was engaged in painting the head of the boiler, and continued this activity until about 2:00 o'clock. It is shown that the sun shone on him while he was doing his painting work, but it does not appear that extreme and excessive heat prevailed.
Shortly before 2:00 o'clock, decedent ceased his painting and walked into the marking room of the laundry, which measured twenty feet by fourteen feet, and had numerous open windows. His purpose in going into the marking room was to determine whether the marking machine was ready for cleaning. This cleaning job was accomplished by blowing compressed air into the machine through a hose regulated by a valve.
Within ten minutes after leaving his paint job, he was found in a helpless condition, lying on the floor next to the marking machine. Evidently, the cleaning process had not commenced for the air valve was closed. He breathed deeply three times and then expired.
The physician who was summoned appeared after death and concluded that the decedent died "from acute occlusion of the blood vessels to the heart, coronary vessels". This medical expert thought that one with high blood pressure should not paint a boiler in the hot sun; but, he also observed that a person could die of heart *Page 875 
disease, such as decedent had, while walking along the street.
The court states, "It is well recognized that if excessive heat, or heavy lifting, or straining, although usual and customary, causes or contributes to a physical breakdown or accelerates its happening, the legal requirements necessary to constitute an accident are present and such cases are compensable. But compensation is not due where no causal connection exists between the employment and the complained of disability or death." (Citing various cases.)
Among the cases cited by the court in that decision is the case of Nickelberry v. Ritchie Grocer Company et al., La. App., 199 So. 415, from which is quoted the following:
"The case therefore presents a situation where the plaintiff admittedly is suffering from a disease of the heart. When the disease began, what was its origin, and the rapidity with which it has progressed, are all matters of pure speculation. The mere fact that a workman develops heart disease while employed by another does not entitle him to compensation. The employeris not the insurer of his employees. (Underscoring ours.) There must be an accident to furnish the basis of any such claim, that it to say, something sudden, undesigned or unexpected and that accident must either cause or aggravate the disease which is the cause of the disability."
The court concluded as follows:
"Decedent's death, as we appreciate the evidence adduced, is not traceable to his employment with the Monroe Steam Laundry; and the demands of plaintiff were correctly rejected."
Counsel for plaintiff in his brief admits that the case of Siscoe v. Cooley, supra, as well as the cases of Murray v. Mengel Co., La. App., 9 So.2d 818, Warren v. Town of Winnfield, La. App., 38 So.2d 171, Lampkin v. Kent Piling Co., La. App.,34 So.2d 76, all hold that in order to recover for injury or death, in any case which was not caused by objective causes, that the injured party must have been engaged in unusually hard, strenuous or heavy work, or working in an area or under conditions which were conducive to bring about that injury or death.
Nevertheless, plaintiff feels that the case of Robichaux v. Realty Operators, Inc., 195 La. 70, 196 So. 23, and the case of Hester v. Tremont Lumber Company, La. App., 15 So.2d 94, in defining an "accident", tend to support the plaintiff's position in this case. We cannot agree with that contention.
The Robichaux case involves a callous growth on which a blow was sustained, and quoting from the syllabus of that case:
"Evidence concerning blow suffered while at work, at point where workman already had a callous growth which was developing into an abscess, held to authorize award of compensation on ground that osteomyelitis necessitating amputation of finger was caused by 'accident'."
In the case of Hester v. Tremont Lumber Company, supra, there is some indication that the decedent might have had high blood pressure even though he did not complain of any trouble or illness until the day of his death, and, in any event, the testimony clearly shows that for several years preceding the date of his death, he had been a boiler maker and had been doing general repair work of that kind; and that for several days prior to his death he had been repairing a boiler, and on the day of his death, at about 2:30 in the afternoon, and for a day or two prior thereto, had been, and was, riveting a boiler; that the labor being performed by him was heavy and hard and done under great strain. Certainly the facts in that case do not exist in the case at bar.
We fail to see where either the Robichaux case, the Tremont case, or any other case cited by the plaintiff, can support his position. It is our conclusion that decedent's death cannot be attributed to any accident, but was the result of natural causes unconnected with his employment, and that, therefore, under our jurisprudence, she has failed to establish her case.
For these reasons, the judgment appealed from is affirmed. *Page 876