LOTTINGER, Judge.
This is a workmen’s compensation suit wherein benefits are sought for total permanent disability. Joined as defendants are Sline Industrial Painters, a foreign corporation doing business in the State of Louisiana, and Continental Casualty Company, the compensation insurer of The Fluor Corporation, Ltd. The petition recites that the plaintiff suffered an accident on or about August 12, 1957 while working for the defendant Sline, and, thereafter, had another accident on or about November 28, 1957 while in the employ of Fluor. It is set forth that “as a result of the aforesaid accident and/or accidents” he sustained injuries resulting in total and permanent disability and the prayer is for judgment against both defendants individually, severally, jointly and in solido for benefits “beginning on August 12, 1957, and/or November 28, 1957.”
On the day of the trial the claim against Continental Casualty Company was dismissed as of non-suit. Following trial and submission of the matter judgment was rendered in favor of the plaintiff awarding him compensation at the rate of $35 per week beginning on August 12, 1957, continuing during the plaintiff’s disability not to exceed 400 weeks, from which judgment Sline Industrial Painters has appealed.
By motion filed in this Court by Mrs. Lelia Quibodeaux, Wilma Mary Gearen and Ray W. Quibodeaux it is set forth that the plaintiff died on September 16, 1958, and that they, as his widow and heirs, respectively, are entitled to be made parties plaintiff.
The trial judge rendered written reasons for judgment from which we quote, in part, as follows:
“For a cause of action, plaintiff alleges that on August 12, 1957, while in the employ of Sline Industrial Painters, he suddenly became violently ill from continuously exerting himself, and from the continuous exposure to chlorine or other gases and fumes; that as a result thereof, plaintiff suffered an accident resulting in damage to his heart and lungs.
*283 “The evidence adduced on the trial of the case reveals that plaintiff is an industrial painter, having worked on various jobs in Louisiana and Texas; that in 1955 he suffered a heart attack while working in Texas and was treated by Dr. Phillippi, a specialist in internal medicine. Dr. Phillippi treated plaintiff from June to September, 1955, and discharged him for light work. Plaintiff then resumed his occupation as an industrial painter working at various jobs in Louisiana and Texas, until sometime in 1957, when he went to work for Sline on the Columbia Southern Chemical Corporation job and worked there until August 12, 1957; that plaintiff in the course of his employment had to do climbing and lifting in the carrying out of his duties as a painter.
“On the morning of August 12, 1957, plaintiff went to work in a building, shown in the photograph marked Exhibit D-l; that plaintiff was working in the top part of the building and that there were certain operations on the floor of the building which caused fumes to go into the ceiling of the building, and which forced the plaintiff and some of his associates to go outside for air; that plaintiff returned to the job and started to vomit due to the intense heat and gases accumulating in the building, because of lack of ventilation ; that shortly thereafter, plaintiff suffered a choking sensation and chest pains, and he was sent to the first aid station, where he was administered to by the company physician, Dr. H. B. Lovejoy.
“A fellow employee testified that at the time of the vomiting by plaintiff, his face became pale.
“Dr. H. B. Lovejoy is a specialist in internal medicine, He is the company doctor for Columbia Southern Corporation. He testified that when he arrived at the first aid station, which is on company property, he saw that plaintiff had suffered a heart attack and was in bad shape. He administered to plaintiff and after some time released him for light duty; his report also showed that plaintiff had gone to work on the Fluor job and stayed there a short time.
“Plaintiff suffered a third heart attack on Thanksgiving Day, 1957, at his home.
“Dr. Lovejoy testified that the work plaintiff was doing on August 12, 1957, could have aggravated the injury to the heart.
“Dr. Kenneth G. Barrett, a general practicioner, testified for plaintiff, but his testimony was not of any help to the Court.
“Defendant had Dr. George M. Anderson, a doctor specializing in internal medicine, to examine plaintiff. Dr. Anderson stated that most heart attacks are caused by hardening of the arteries, or arteriosclerosis. He did not say that the type of work plaintiff did could have aggravated the pre-existing heart condition.
******
“The Court is of the opinion that the intense heat encountered by plaintiff while in the course of employment, which followed Hurricane Audrey on June 27, 1957, and continued through the summer, along with the gases caused from the vapors or fumes aggravated plaintiff’s condition and brought on the heart attack complained of on August 12, 1957.”
The record is clear to the effect that the plaintiff suffered a myocardial infarction on August 12th and that as a result of same he was totally and permanently disabled. The only serious question presented is whether there was a causal connection between his employment activity and the resulting disability, for the law is clear to the effect that:
*284 “ * * * before an accident can be established, it must be shown that there was a causal connection between the employment activity and the resulting injury or death, and the jurisprudence is to the effect unless some specific act resulting in injury or death can be shown, or unless it be shown that the nature of the work itself was sufficiently strenuous, or the nature of the work, plus the conditions under which it was done, to cause injury or death, then no causal connection could be deemed established.” Waller v. Stone & Webster Engineering Corporation, La.App., 42 So.2d 872, 874.
The trial judge’s observations with respect to the plaintiff’s working conditions on the day of the accident are amply substantiated by the record. He had worked in that particular building only four or five days before the accident and it is clear that from three or four pits with fires, coupled with poor ventilation, there was a considerable amount of fumes, smoke and heat present where he was working on the day of the accident.
Coming now to the medical testimony, Dr. Robert C. Looney (whose testimony was not commented on by the trial judge) testified as follows:
“Q. Did Mr. Quibodeaux describe to you the type of duties that he was performing on August 12, 1957, when he had his second attack? A. Yes, Mr. Quibodeaux did go into some detailed discussion of the type work he was doing. He was, as I understand it, he was working in a building, small building, some type of metallic building, and was up on scaffolds doing some painting, spot painting, and Mr. Quibo-deaux says that the areation or ventilation was poor, and that during this he got his pain and felt suffocated and he became more and more ill.
“Q. Did he mention anything to you about vapors or fumes ? A. That was the point I was making, he was working over the fumes, coming up from down below and he was up in the ceiling.
“Q. Doctor, based on the work and the working conditions such as the one Mr. Quibodeaux described to you, could that have precipitated the heart attack that he had on August 12, 1957? A. Yes, I think that heavy exertion and the work that he was doing could have precipitated a heart attack.”
Dr. Lovejoy, the company physician, after having stated that his diagnosis was an acute posterior myocardial infarction, said that his original opinion was that the plaintiff’s heart attack was precipitated and aggravated by the excessive heat and vapors to which he had been exposed. It seems that he subsequently changed his opinion because of the fact that the plaintiff had eaten his lunch, a factor which could have caused or precipitated the attack. The record reflects, however, by the testimony of plaintiff and others that he had not eaten his lunch.
Dr. George M. Anderson, testifying on behalf of the defendant, gave the following pertinent testimony:
“Q. Doctor, assuming this particular day, August 12th, there was an extra exertion or an extra amount of heat than what this man had been accustomed to. A. If there is the extreme above and beyond what you are accustomed to, yes, sir, that will aggravate, that can precipitate. You have the diseased blood vessel but if it is above and beyond your usual duties, yes, sir, I consider that aggravation.
“Q. Doctor, just specifically concerning Mr. Quibodeaux now. A. Yes, sir.”
Counsel for defendant argues that our holding in the case of Leonard v. Consolidated Rock, La.App., 101 So.2d 736, should be controlling here. That case, however, is not apposite here for there we *285 found as a fact that the decedent was not working under excessive heat and that the evidence failed to show a causal connection between the decedent’s heart attack and his employment. As pointed out above, we find as 'a fact here that plaintiff was working under conditions of heat and smoke and we are of the opinion that the burden of proving a causal connection between these working conditions and the attack has been adequately discharged.
For the reasons assigned, the judgment appealed from is affirmed.
Judgment affirmed.