ELLIS, Judge.
The plaintiff filed this suit for Workmen’s Compensation benefits for total and permanent disability allegedly resulting from a heart attack he suffered on or about May 27, 1959. The plaintiff was paid compensation from the date he suffered the attack for 34 weeks at the maximum amount allowed by law, together with $2191.96 medical at the time of the trial.
After trial on the merits, judgment was rendered by the District Court in favor of the plaintiff and against the defendant, Globe Indemnity Company, at the rate of $35.00 per week, not to exceed 400 weeks, beginning May 27th, 1959, and granting to plaintiff the maximum of $2,500.00 for all medical expenses. The District Court also found that the discontinuance of the payments of Workmen’s Compensation by the defendant and their refusal to reinstate such payments upon demand, was arbitrary, *914 capricious and without probable cause and plaintiff was awarded attorney’s fees in the sum of $1,000.00 to be paid by the defendant, Globe Indemnity Company. The doctors, as expert witnesses, who appeared and testified in the trial were allowed fees of $50.00 each for Dr. R. K. Vidrine and Dr. John M. Mosely, and $150.00 for Dr. James E. Toups.
From this judgment the defendants have appealed.
Plaintiff filed an answer to the appeal seeking statutory damages for a frivolous appeal, together with mandatory statutory damages allowed under LSA-R.S. 22:658. In a supplemental answer to the appeal, plaintiff sought to have the award of $1,-000.00 as the fee of the attorney increased to $2,000.00, and in a third supplemental answer to the appeal plaintiff had made an error in seeking to have Royal Indemnity Company held in judgment rather than Globe Indemnity Company and prayed for such correction.
The defendants specify two errors that are the issues in this appeal, to-wit:
“I. The plaintiff completely failed to prove that anything he did while acting in the course of his employment or anything that happened to him while he was acting in the course of his employment, caused, precipitated, brought on or otherwise contributed to his alleged coronary thrombosis.”
“II. Alternatively, the Trial Court erred in refusing to recognize defendant-appellant’s right to credit for the wages that the plaintiff’s employer has paid the plaintiff since May 27, 1959.”
Defendants argue that the plaintiff bears the burden of proof and cite the well settled principle in Workmen’s Compensation cases that the plaintiff in a Workmen’s Compensation case carries the burden of proof as in other civil cases and is required to establish his claim by a reasonable preponderance of the evidence, citing Fontenot v. Camden Fire Insurance Association, La. App., 124 So.2d 640, and other cases cited therein.
Counsel for defendant argues that the plaintiff must prove the fact that he had a coronary thrombosis and further that it was actually caused or was contributed to by excessive heat, heavy lifting, strain, trauma, fright, etc., while acting in the course of his employment. In support of this argument he cites the case of Nickelberry v. Ritchie Grocer Co., 196 La. 1011, 200 So. 330; Hemphill v. Tremont Lumber Co., 209 La. 885, 25 So.2d 625; Waller v. Stone & Webster Engineering Corporation, La.App., 42 So.2d 872, 874, and Malone, Louisiana Workmen’s Compensation Law and Practice, p. 261, which is quoted as follows:
“In some of the cases it is stated that although the disabling event need not be different in kind or intensity from the regular work of the employee, yet it must appear that the employee’s regular work was physically strenuous in character or that he was regularly required to work in excessive heat. The reason for this apparent qrtalification is obvious: The fact that the event need not be unusual or unexpected does not obviate the fundamental requirement that the claimant must show a causal relationship between his disability and the conditions under which he performed his work. Where the regular duties are not of a sufficiently strenuous character to cause injury even to persons of weak constitutions, the Courts properly insist on a showing of some special event which could account for the disability.”
The next question is whether, under the evidence in the record, the plaintiff satisfied the legal requirements set forth above. Defendants have ably urged that the evidence did not support plaintiff’s claims for total and permanent disability or that the resulting heart attack was caused by any strenuous physical activities on the day he suffered the heart attack. In this particu *915 lar case we are primarily concerned with the activities of the plaintiff shortly before, or on, the date that he actually suffered the heart attack. The activities he performed on that date were substantially as follows:
On the morning in question the plaintiff picked up several Negro workers and took them to the cottonfields, where he sharpened hoes for them with which they were to weed the cotton. After that, he went to the pasture, assisted one of the hands in repairing a tractor, and in doing so they had to take apart the hydraulic pump, place new parts therein, and reassemble it. Shortly after that another worker confronted him with a problem of a disk with a bent axle. The disk weighed approximately 200 pounds and plaintiff and a helper lifted the disk, placed it in the truck and took it to the welding shop in nearby Innis, Louisiana. Plaintiff testified that it was little before 11:30 when the repairs were completed on the disk and he helped reload it and brought it back to the plantation, unloaded it again and reassembled the disk. He went back to check on the tractor that he had repaired earlier and found it in good running condition. He became aware of feeling ill, which was just around noon. Plaintiff told his family that he did not feel good and got his son to take his truck, pick up the hands and bring them back to the store. From there plaintiff took the truck and the hands back to the field. He started to sharpen some hoes for the workers and while working on the third hoe his left arm commenced to hurt and he discontinued his work, got into his truck and started home. As he came into the yard he waited for his wife to come to his assistance and he staggered into the house and apparently fell. He was taken to St. Joseph’s hospital in New Roads and treated by Dr. Mosely.
While on the subject of plaintiff’s duties, it is shown that he did strenuous, manual labor along with his over-seeing or supervisory work. He attended to the cattle, which included riding a horse and feeding them during the winter months, drove tractors, sawed down trees, built and repaired fences, barns, houses, made hay and hauled it in, repaired tractors, hired and discharged workers, paid them off and kept their time.
Dr. Mosely did not have the hospital records available so as to testify to the length of time plaintiff remained in the hospital originally, however, he stated that plaintiff returned to the hospital on June 9, 1959 and on admission his blood pressure “was 80/60 and he was again in shock, very badly in shock.” He remained in the hospital until July 16, 1959. Dr. Mosely was definitely of the opinion, although he frankly admitted that he could not substantiate that opinion, that plaintiff on May 27, 1959 had suffered a coronary thrombosis. On plaintiff’s first or original admission, the day he suffered the first attack, he was in shock “with pre-cardial pain — pain in the chest, radiating down the left arm.” This doctor continuously treated plaintiff for a coronary thrombosis. Dr. Mosely at no time told the plaintiff that he could go back to hard, manual labor, but that he could return to work in a strictly supervisory capacity. The doctor wrote a letter on February 10, 1960 to this effect to the Baton Rouge Claims Service in which he specifically stated that “ * * * Mr. Jere Howard may return to work in a supervisory capacity. Mr. Howard should not attempt any hard, physical labor at any time.” It was also shown that plaintiff evidently had angina and had gone to Dr. Mosely several years prior to his serious attack on May 27, 1959. Dr. Mosely had prescribed nitroglycerin pills. It is also shown by the medical testimony that a person subject to angina is more likely to have a coronary attack than one without angina.
The plaintiff was referred to Dr. J. E. Toups by Dr. Mosely and the former examined the cardiograms and the patient, first seeing him on September 15, 1959. This doctor did not at first think that plaintiff had suffered a coronary thrombosis, however, after certain tests testified that “we would be willing to accept the diagnosis of coronary thrombosis without electro-cardiographic evidence of infarction.” This *916 doctor stated that he would have no reason to believe that the plaintiff would not have been able to do supervisory work when he first saw him on March 7, 1960. He distinguished this kind of work from manual labor.
On August 14, 1960 plaintiff-suffered an•other heart attack and due to the absence of Dr. Mosely, Dr. Vidrine made an emergency call to his home. Plaintiff was unable to talk to the doctor when he arrived. Plaintiff was again taken to the hospital in New 'Roads where he remained seven days. Dr. Vidrine diagnosed this heart attack as coronary thrombosis and was of the positive ■opinion that “He should not do any manual labor at all”, and that he was totally and permanently disabled from the performance ©f such labor.
We are of the opinion that the District Judge did not commit any manifest er•ror in concluding that the plaintiff had proven by a preponderance of the evidence -a connection or contributing cause due to the manual labor he performed in his employment and particularly on the date of Ris first attack, May 27, 1959, and also that íis a result of the attack of coronary thrombosis the plaintiff was and still is permanently and totally disabled within the meaning and intent of the Compensation Act.
The plaintiff’s original answer to the appeal contains a prayer for an increase in the award for the attorneys fees allowed from $1,000.00 to $2,000.00 and for statutory penalties as well as damages for a frivolous appeal. Plaintiff is clearly not entitled to damages for a frivolous appeal and we find nothing in the record to justify an increase in the attorney fees from $1000.00 to $2000.00. The judgment of the District Court in this respect is not manifestly erroneous.
We are of the opinion, however, that the District Court should have awarded the plaintiff the 12% statutory damages provided for in LSA-R.S. 22:658, for the record is convincing that defendant’s failure to continue the payment of compensation to the plaintiff was arbitrary or without probable cause. Their refusal and discontinuance of payment of plaintiff’s compensation was based upon the contents of a letter addressed to plaintiff on February 11, 1960 by the Baton Rouge Claims Service Inc., which read as follows:
“February 11, 1960
“Mr. Jere Howard
“Batchelor, Louisiana
“re: H. O. Claim No. 04-487-10880
“Insured — Walter H. Claiborne
“Claimant — -Jere Howard
“D/A 5-27-59
•“Dear Mr. Ploward:
■“According to the information we have including recent medical report, you are now able to return to your regular duty as a supervisor which does not involve hard physical labor. Therefore, compensation payments have .been discontinued as of January 19, 1960.
“Yours very truly,
“BATON ROUGE CLAIMS SERVICE, INC.
“WPA/mf s/ Wm. P. Adams, Sr.
“cc: Royal Indemity Company
“New Orleans, Louisiana”
*917 In addition to the above letter the defendants rely upon the medical testimony and particularly that of Dr. Toups, that as of the date of the discontinuance of the payments to plaintiff this doctor had informed them that plaintiff could return to his supervisory duties and also that they believed those were the only duties which plaintiff had formally performed. This defense is not borne out by the record, for a thorough investigation was shown to have been made on behalf of the defendants as to the duties of the plaintiff, and in addition there are letters from counsel and from plaintiff’s wife which refute this contention of defendants. There was never any question but that the plaintiff’s duties consisted not only of supervisory work but of hard manual labor. The judgment of the District Court in failing to award the statutory penalties is manifestly erroneous. In this respect the judgment will be amended and plaintiff will be awarded 12% statutory damages provided for in LSA-R.S. 22:658.
The defendant-appellant contends that the District Court erred in refusing to recognize its right to credit for the wages plaintiff’s employer has paid the plaintiff since May 27, 1959. Plaintiff’s employer testified that at the time of the trial he was paying plaintiff as shown by his testimony as follows:
“Well, Mr. Howard is getting a hundred dollars a month in cash, plus a free — free lot for his store building and a free lot for his saloon and free rent— cattle rent' — on a pasture for about twenty head of cattle.”
He further testified that he owned the house in which plaintiff lived and that the latter was getting free rent. It is not shown in the record the value that should be attached to each of these gratuities, however, the District Judge found that “the things Mr. Claiborne did for the plaintiff after May 27, 1959 were purely gratuitous * * * ”, and concluded that no credits should be allowed. We are in accord with the finding of the trial court that the $100.00 per month and other free benefits furnished plaintiff should be considered as gratuitous, for the record reveals that the employer testified that the plaintiff was like a son to him, very loyal, and that a very close friendship existed between the two and that he continued paying the plaintiff because he considered it a moral obligation. It is further shown that although the plaintiff was presumed to be doing his former supervisory work that he was really unable to perform the duties ordinarily expected of him in this capacity and he made no attempt to perform the duties when he was feeling bad or sick, and that his employer did not expect it.
Counsel for the defendant relies upon the case of Walters v. General Accident & Fire Assur. Corp. Ltd., 119 So.2d 550, decided by this Court and in which Judge Landry as the organ of this Court, fully covered the rule applicable to the question of credits. In this case we held:
“The question of whether wages paid subsequent to injury are earned or paid gratuitously in lieu of compensation has been considered by the appellate courts of this state on many occasions and under circumstances involving different legal principles, namely, pleas of prematurity and prescription, exceptions of no right and no cause of action and with respect to allowance of credit to employers for such payments as an off-set to compensation due employees. We believe the jurisprudence of this state settled to the effect that payment of unearned wages in lieu of compensation (unaccompanied by concurrent payment of compensation as such) is considered a gratuity intended by the employer and employee as a substitute for compensation benefits and the employer entitled to credit for one week of compensation for each week during which such unearned wages paid equal or exceed the compensation rate of the employee. Mottet v. Libbey-Owens-Ford Glass Co., 220 La. 653, 57 So.2d 218; White *918 v. Calcasieu Paper Co., La.App., 96 So.2d 621; Myers v. Jahncke Service, Inc., La.App., 76 So.2d 436; Pohl v. American Bridge Division U. S. Steel Corp., La.App., 109 So.2d 823. These same cases also recognize and hold that if wages paid a disabled employee subsequent to injury are earned by the employee in the performance of work of a character different from that in which the employee was engaged at the time of injury, such wages are considered earned in a different occupation consequently there is no implied agreement they are paid in lieu of compensation and the employer may not receive credit therefor against compensation payable.”
Plaintiff was not employed in any different occupation or capacity as his former employment included supervisory duties. However, it is clearly shown in this case that he was not expected and did not fully perform these duties and that compensation paid or other benefits furnished were gratuitous on the part of his employer, and the defendant would be entitled to such credits.
We do not believe, however, that we can finally dispose of this feature of the case in view of the fact that the Lower Court sustained an objection by counsel for plaintiff to questions propounded by counsel for defendant seeking to find out the amount paid to the plaintiff by his employer which would necessarily include the value of the free services or benefits furnished to him. It would also be necessary for the record to show exactly how long plaintiff’s employer paid him subsequent to May 27, 1959 in order to arrive at the proper credit on behalf of the defendant.
For the above and foregoing reasons it is ordered, adjudged and decreed that the judgment of the District Court be amended and the plaintiff is now awarded the statutory penalties provided for in LSA-R.S. 22:658 and as thus amended the judgment of the District Court is affirmed in all other respects except:
It is hereby ordered that the case be remanded to the District Court for the purpose of ascertaining the amount of credit due to the defendant because of the gratuitous payments to plaintiff subsequent to May 27, 1959.
Judgment amended and affirmed in certain respects and remanded for further evidence.