150 So.2d 892 (1963)
Mrs. Carrie YOUNG, Widow of Conley FRANKLIN, Jr.
v.
OLD COLONY INSURANCE COMPANY and Saverio J. Nicolosi.
No. 943.
Court of Appeal of Louisiana, Fourth Circuit.
March 4, 1963.
Rehearing Denied April 1, 1963.
Certiorari Refused May 14, 1963.
*893 John P. Dowling, New Orleans, for plaintiff-appellant.
Bienvenu & Culver, P. A. Bienvenu and Timothy J. McNamara, New Orleans, for defendants-appellees.
Before McBRIDE, YARRUT and SAMUEL, JJ.
SAMUEL, Judge.
This suit was instituted under the Louisiana Workmen's Compensation Act by the widow of Conley Franklin, Jr., a deceased employee. She seeks death benefits, burial expenses, statutory penalties and attorney's fees. Defendants are the employer and his compensation insurer.
The petition alleges that plaintiff's husband died on July 25, 1960, of a myocardial infarction caused and precipitated by the work he was performing. Defendants filed an answer chiefly in the form of a general denial. They now contend, as they did before the district court after trial, that plaintiff has failed to prove the occurrence of an accident, compensable under the act, which had a causal connection with her husband's death and that the actual medical cause of death also has not been proved. The trial court found that the facts did not show a causal connexity between the type of work the decedent was performing and the cause of his death and rendered judgment in favor of defendants, dismissing the suit. Plaintiff has appealed.
Franklin was a 40 year old carpenter. He had a prior history of heart disease (myocardial infarction) as shown by medical records of the Veteran's Administration Hospital in New Orleans, which records were introduced in evidence, and the testimony of his treating physician who had seen him for the last time during January of 1959 when Franklin was continued on medication for the heart. He had had many attacks prior to the day of his death (well over 75 according to the hospital record) and on several occasions had left his work because of illness.
In the morning of the day of his death Franklin drove plaintiff to her place of *894 employment. He left her there and proceeded to his work. At that time he was not ill and was in high spirits. He arrived at his work sometime before 8:10 a. m.
Franklin's work on that day, described by the testimony as being ordinary carpentry work, i.e., neither light nor heavy, consisted of nailing rafters in place on top of the roof of a residence under construction. The rafters were 2 × 6 and of varying lengths from 2 to 18 feet. On the preceding work day they had been cut to proper size and placed on the roof. Franklin was working with another carpenter, each on an opposite end of each rafter, and it was necessary for them to put each rafter in its proper position and nail it in place. During the time decedent worked that day, on the roof under the sun, the temperature was not lower than 86 and not higher than 90°.
Franklin became ill while he was working and left the job to return home. The early details of the illness are not revealed by the record due to the fact that the only person who could have testified to those facts, the other carpenter with whom Franklin was working, was out of the state at the time of trial. He reached his home with the assistance of two other men. The record is not clear as to what happened between the time he left his work and the time he arrived at his residence due to the fact that the two men were unknown and therefore not available for the giving of testimony. But from all the evidence we conclude that Franklin attempted to drive home in his own car, was unable to do so because of his illness, and received assistance from the two strangers.
Upon arriving at his home three of the neighbors, two women and a man, helped the two strangers to get Franklin into the house and into bed. He was either assisted or carried from the automobile. He was conscious and told them where to get his "white pills". The pills gave him some relief but only for a short time. He complained of a pain in the chest, was short of breath, pale, perspiring and foaming at the mouth. One of the neighbors left to get plaintiff from her work and she arrived at her residence shortly before Franklin died. His death occurred approximately three hours after he had left work to return home. He was not seen by a physician on that day prior to his death.
In compensation cases the burden is upon the plaintiff to prove his claim to a legal certainty by a preponderance of the evidence; conjecture and probability alone cannot serve as the basis for a judgment in his favor. Fontenot v. Camden Fire Insurance Association, La.App., 124 So.2d 640; Davis v. Reynolds, La.App., 96 So.2d 368; see Howard v. Globe Indemnity Company, La. App., 147 So.2d 912. Our jurisprudence uniformly recognizes that benefits are due in compensation cases involving heart conditions resulting in disability or death, whether or not the condition is preexisting, when caused, precipitated or accelerated by even the usual and customary activities, exertions and other factors directly connected with the employment. Andrepont v. Calcasieu Paper Company, La.App., 131 So.2d 585; Talbot v. Trinity Universal Insurance Co., La.App., 99 So.2d 811; Hemphill v. Tremont Lumber Co., 209 La. 885, 25 So.2d 625.
The issue here involved is one of causal connection between Franklin's employment activity, i.e., the work he was engaged in at the time he became ill, and his death. Two questions are presented for determination: (1) Was the immediate cause of his death myocardial infarction or other heart failure?; and (2) If so, has plaintiff proved, to a legal certainty by a preponderance of the evidence, that such work brought on, precipitated or accelerated the fatal heart attack?
The record contains the testimony of only two medical witnesses, both produced by the plaintiff, Dr. Arthur Z. Blamphin, Franklin's treating physician, and Dr. Ignacio Medina, as assistant coroner.
Dr. Blamphin testified that on the basis of his patient's history he had diagnosed Franklin's illness as angina and had placed *895 him on medication designed for patients with angina coronary occlusions. He had seen the decedent for the last time in January of 1959, approximately one and one-half years before his death. Essentially this doctor's testimony was limited to what we have set out in the two preceding sentences. Dr. Blamphin gave no testimony regarding the cause or probable cause of Franklin's death or of the effect his work could have had upon that cause.
Dr. Medina testified chiefly from the coroner's day book record and in connection with the introduction of a coroner's death certificate, the original of which he had signed as assistant coroner. He could not remember whether he had actually viewed the body, for the reason that the death had occurred approximately two years prior to the trial. He testified that the type of work being done by Franklin, climbing a ladder and doing carpentry work beneath a July sun, could "trigger off" a heart attack on any man with a bad heart and that "everything" in Franklin's history pointed to a bad heart. He also said it is possible for a person to die from myocardial infarction while walking, sitting or even resting in bed. While Dr. Medina's testimony, particularly as elicited by questions asked on direct examination, is not always clear as to whether he is expressing his own independent opinion as to the cause of Franklin's death or whether he is only explaining the meaning of the death certificate relative to that cause, from a fair reading of all of his testimony we conclude that his opinion, independent of the death certificate, was that the cause of Franklin's death was myocardial infarction which could have been brought on by the work he was doing at the time of the attack.
We have examined the record with care searching for proof of the cause of Franklin's death and proof of the alleged fact that that cause was brought on, precipitated or accelerated by his employment activity. The only possible sources of such proof are the death certificate, which was received in evidence, and Dr. Medina's testimony.
The instrument we refer to as a death certificate was a document issued by the coroner's office over the signature of the assistant coroner. It states that Conley Franklin, Jr., died on 7/25/60 at 1:45 p. m. and gives Franklin's address, age, sex, race, place of death and other similar information. It also states that he was pronounced dead by Dr. J. H. Devalcourt (this doctor was not produced at the trial and was unknown to the assistant coroner) and gives some of Franklin's medical history. It contains a "Final Diagnosis", which Dr. Medina testified means cause of death, as myocardial infarction. The factual information contained in the certificate was obtained by a policement attached to the coroner's office and relayed by him to a clerk in that office.
A death certificate, including a certificate from a coroner's office or the report of a coroner's jury, is competent proof only of the death itself and no further; it is not proof of the cause of death and is inadmissible for the purpose of showing cause. Brooks v. Washington National Life Insurance Co., La.App., 79 So.2d 653; Clay v. Liberty Industrial Life Ins. Co., La.App., 157 So. 838; Webster v. New York Life Ins. Co., 160 La. 854, 107 So. 599.
Thus we have only Dr. Medina's testimony to prove the cause of death and the connexity between the employment activity and that cause. But in view of all the circumstances here involved, including particularly the fact that Dr. Medina's testimony is completely uncontradicted and the fact that Franklin suffered the attack while engaged in his work and died approximately three hours thereafter without recovering from the attack, we are of the opinion that the plaintiff has proved by a preponderance of the evidence that the cause of her husband's death was myocardial infarction brought on by his employment activity. Therefore plaintiff is entitled to a judgment.
*896 Plaintiff is not entitled to statutory penalties and attorney's fees against the defendant insurer as claimed by her under LSA-R.S. 22:658, which provides for such penalties and reasonable attorney's fees where there is a failure to make payment within 60 days after receipt of proper proofs and demand therefor and when such failure is found to be arbitrary, capricious or without probable cause. We are satisfied that the failure to pay in the instant case was clearly not arbitrary, capricious or without probable cause. The case is close and the trial judge was of the opinion that no compensation was due. Nor is plaintiff entitled to burial expenses not to exceed $600.00 as claimed by her under LSA-R.S. 23:1210. The record is entirely devoid of any proof as to burial expenses or of any expenditure for that purpose.
Franklin regularly worked for his employer eight hours a day and five days a week for which he received $2.00 per hour, or $80.00 per week. Under our settled jurisprudence we are required to employ the six day week in calculating his weekly wage for the purpose of determining compensation. Brown v. Benton Creosoting Co., La.App., 147 So.2d 89; Hoffman v. City of New Orleans, 240 La. 943, 125 So.2d 774; Carrington v. Consolidated Underwriters, 230 La. 939, 89 So.2d 399; Rylander v. T. Smith & Son, Inc., 177 La. 716, 149 So. 434. Therefore plaintiff is entitled to weekly benefits based upon the daily wage of $16.00 multiplied by six or $96.00. She is entitled to 32½% of that weekly wage (LSA-R.S. 23:1232) for a period of 400 weeks (LSA-R.S. 23:1231). 32½% of $96.00 is $31.20. Her benefits therefore are $31.20 per week for a period of 400 weeks unless sooner terminated under the act
For the reasons assigned, the judgment appealed from is reversed and set aside and it is now ordered that there be judgment in favor of plaintiff, Carrie Young, widow of Conley Franklin, Jr., and against defendants, Saverio J. Nicolosi and Old Colony Insurance Company, in solido, for compensation at the rate of $31.20 per week beginning July 25, 1960 and continuing for a period of 400 weeks, with interest at the rate of 5% per annum on each past due payment from its due date until paid. It is further ordered that all accrued amounts with such interest, from the due date of each until paid, shall be paid in a lump sum. It is further ordered that plaintiff's attorney shall receive a fee, to be paid by plaintiff under LSA-R.S. 23:1141, of 20% of the first $5,000.00 which may be collected or recovered under this judgment and of 10% of the amount exceeding $5,000.00 which may be collected or recovered under this judgment. All costs are to be paid by the defendants.
Reversed and rendered.