GLADNEY, Judge.
Plaintiff seeks to recover workmen’s compensation on behalf of herself and minor children by reason of the death of her husband on January 28, 1961. Mr. Wallace died as a result of a heart condition during the course of his employment with Yuba Consolidated Industries, Inc. Judgment was rendered denying plaintiff relief, hence this appeal. The issue herein presented is whether occupational activity had a causal relation in a medical sense to the death of the deceased. The trial court concluded that such a relationship between the deceased’s job activity and the fatal heart illness was not established by a preponderance of the evidence.
The deceased at the time of his death was aged 56 years, five feet ten inches in height and weighed approximately two hundred and twenty pounds. He had suffered from a chronic weakness of the heart since 1954. He was employed in construction work when he first suffered a heart attack that required treatment by Dr. E. L. Wenk of *763 Shreveport. The doctor’s testimony discloses Wallace had experienced intermittent pain in the anterior portion of the chest -wall and the condition was diagnosed as angina pectoris or coronary insufficiency. Nitroglycerin tablets were prescribed. About a week later Wallace suffered a second and more severe seizure whereupon he was rested for a period of five weeks. Thereafter he returned to his work and was not again examined by Dr. Wenk. In November, 1960, Wallace again began experiencing symptoms of heart trouble for which he consulted Dr. J. V. Hendrick who ■concluded that the patient was suffering from chronic heart failure. Digitalis was prescribed. This condition improved and no time was lost from his employment.
Wallace worked for Yuba Consolidated Industries approximately a year prior to his death. His work was performed on three eight hour shifts with two other workers. One of these workers, Charlie D. Chelette, normally relieved Wallace at 3 :30 P.M. and worked until 11:30 P.M. Wallace had reported for work at 7:30 A.M. the morning of January 28, 1961 and brought his lunch. The day was chilly and there was some snow on the ground which was partially frozen. The employee’s work was in connection with the erection of a bridge ■across the Red River and the site of his job was on the east bank in the city of Bossier City. The job required the servicing of a motor-driven pump which kept water pumped from within a cofferdam enclosing an excavation around one of the bridge piers. At the bottom of the excavation there were three motors, one powered by electricity, one by butane and one by gasoline. However, on the day in question the gasoline motor was the only one in use. During the course of the eight hour shift the employee made several trips down into the excavation. In servicing the gasoline motor he obtained gasoline from a tank equipped with a hand-operated pump situated about 100 yards distant from the office where he waited between trips. After obtaining the gasoline from the tank it was carried in a five gallon can (which when filled weighed approximately forty pounds) back over the same path, thence down twelve or fourteen steps cut from the earthern embankment and across to the cofferdam where he descended a ladder some six or seven feet to the pump platform. After completing his duties in connection with the pump he would return to the shelter house close to the earthen steps. The necessity of carrying the can filled with five gallons of gasoline was required about three times during the eight hour period.
Due to weather conditions on January 28th the job was shut down and only three employees were at work. One of these was Henry Zuber, the job superintendent and the other was James Matheny, a mechanic. The latter had reported for work at 7 A.M. and remained until about 11:30 A.M. during which time he saw Wallace two or three times. He testified Wallace appeared to be normal and to his knowledge did no unusually heavy work on that day. Zuber was at the job site from about 12:45 P.M. until about 1:05 P.M. When he arrived he found Wallace sitting in his car eating a sandwich. They conversed for a short while before Zuber drove away. The latter testified Wallace made no complaint to him of any physical discomfort and he observed no signs of illness. At approximately 1:45 P.M. the deceased was talking to his wife by telephone, which conversation had been going on for about five minutes, when he suddenly stopped talking, the receiver fell, and his wife heard him struggling for breath. When help arrived he was dead in the office near the telephone. The coroner recorded the cause of death as coronary arterial occlusion. No autopsy was performed.
The medical testimony included that of Dr. Frank T. Dienst, Jr., an internist and cardiologist, Dr. E. L. Wenk and Dr. J. V. Hendrick, both general practitioners, and Dr. William M. Hall, internist and cardiologist. The testimony of Dr. Wenk and Dr. Hendrick was principally with reference to facts relating to decedent’s past *764 heart condition. Neither was able to produce records and both testified from memory.
As Dr. Dienst and Dr. Hall had not actually treated the deceased they testified in response to hypothetical questions. Dr. Dienst testified the immediate and precipitating factors that brought on the death of the decedent were: first, the fact that he had just eaten when the cold weather was nonconducive to his type of heart disease; second, that he had probably over-exerted through climbing up and down the steps. Such exertion, he said, at any other time with a more normal temperature, might not have caused any trouble but with the cold being present he thought it precipitated a mild cardiac infarction. When given the same set of facts, Dr. Hall was of the opinion the sudden death resulted solely by reason of the antecedent coronary arteriary disease and the mechanism of death was either ventrical fibrillation or cardiac standstill; and that the fatal infarction did not occur as a result of the deceased going up and down steps but that this slight exercise was beneficial to him. Also he opined that the fact that Wallace had just eaten his lunch had no effect upon his death. The conclusion of this expert was that the deceased would have died of this very heart attack no matter where he had been or what he was doing, and further, that if the heart collapse had been occasioned by strenuous exercise the attack would have occurred while he was in the midst of the exertion. In addition to the expressed opinions of Doctors Dienst and Hall are the views of Dr. Wenlc who testified he did not believe that the fact that Wallace went up and down the ladder of the cofferdam several times a day was detrimental to his cardiac condition and, in his opinion, it was “all right for him to climb a ladder at a slow methodical fashion.”
The issue which is of a factual nature, conclusively shows that on the day of his fatal illness and for approximately twelve months prior to his death Wallace gf*ve no indication of an acute stage of the chronic cardiac condition from which he suffered since 1954. When seen by Matheny and Zuber shortly before the attack he appeared normal and made no complaint of any discomfort. Nor did he complain to his wife after talking to her for about five minutes on the telephone. The duties of his job required but little if any physical exertion, his most arduous task consisting of walking a distance of some 100 yards and descending two sets of steps with a gasoline can which when loaded weighed approximately forty pounds. Considering the employee’s size and natural strength, we think carrying a five gallon can of gasoline a short distance would not have over-taxed his strength. Of some significance also is that each occurrence was followed by long rest periods.
In discussing the award of workmen’s compensation where the “accident” is allegedly due to vascular or cardiac condition, Professor Wex S. Malone in Section 256 of his treatise Louisiana Workmen’s Compensation and practice, writes with respect to the issue under consideration:
“Trauma usually associated with any strenuous employment is often sufficient to bring about the disability or death of an employee suffering from a diseased heart or high blood pressure. Complications in proving causation arise from the fact that the natural progress of pre-existing heart infirmities can produce disability at any moment regardless of any outside influence. Plowever, it is well settled in medical science that exertion and heat characteristic of heavy physical duties can cause severe injury to a weakened heart or blood vessel. The issue of causal relation is now usually resolved into the sufficiency of alleged exertions and overheating to injure the heart or blood vessel in the specific case. * * * ”
In Danziger v. Employers Mutual Liability Insurance Company of Wisconsin, 245 La. 33, 156 So.2d 468, the Supreme Court in discussing the necessity for establishing a caus *765 al relationship between the activities of the employment and a disabling condition resulting from the impairment of the function of the heart, observed:
“However, certain limitations or ground rules, so to speak, have been applied by the courts in determining whether there has been an ‘accident’ within the meaning and intendment of the law. First and foremost, it may be said that the vascular disease cases have been limited to employees who perform manual labor and recovery in such instances will not he permitted unless it is shown that the diseased organ gives way or its function is impaired while the laborer is discharging his usual and customary laborious work.” [Danziger v. Employers Mutual Liability Insurance Company of Wisconsin, 245 La. 33, 156 So.2d 468, 473]
 Imposed upon the plaintiff herein is the duty of establishing her case by a preponderance of the evidence. The record fails to disclose any evidence of strenuous activity by the employee on the morning of his work. On this ground the trial court concluded that the evidence had failed to establish that the employee’s death was occasioned by any unusual or strenuous duties that precipitated the heart attack. We are impelled to agree with this conclusion.
Counsel has cited certain authorities as supporting appellant’s position that the death of the employee was due to exertion occasioned by his work. These are Sharp v. Esso Standard Oil Company, La.App., 72 So.2d 601 (1st Cir. 1954); Neldare v. Schuylkill Products Company, La.App., 107 So.2d 487 (1st Cir. 1958); Howard v. Globe Indemnity Co., La.App., 147 So.2d 912 (1st. Cir. 1962 Cert. denied) and Franklin v. Old Colony Insurance Co., La.App., 150 So.2d 892. (4th Cir. 1963). These cases must be interpreted in the light of their peculiar facts which are easily distinguished from those of the instant case. Causal connection between the job activity and heart condition was recognized in Sharp v. Esso Standard Oil Company, supra, because of medical testimony that related a disabling heart attack of December 13 with a heart condition thirty days earlier when the employee was unable to close a large valve and was forced to call other employees for help. The latter, immediately after the occurrence, noticed Sharp had a “cyanotic” appearance. Neldare v. Schuylkill Products Company, supra, presented a case where the court found that the employee suffered an “accident” within the meaning of the workmen’s compensation act by reason of a malfunction of the heart known as auricular fibrillation which occurred when his heart started quivering and fluttering while the employee was in the act of raking hardened substance in trays under intense fire and heat in hearth. Workmen’s compensation was awarded in Howard v. Globe Indemnity Company, supra, to an employee who sustained a heart attack soon after performing strenuous manual labor. The case of Franklin v. Old Colony Insurance Company supra, presents a case where causal connection was recognized. The facts indicate that Franklin was doing ordinary carpenter work which required nailing of 2 x 6 rafters of varying lengths from 2 to 18 feet. He was working with another carpenter under a roof where the temperature was between 86 and 90 degrees. While so working he became ill and left the job to return home where he was placed in bed and death occurred approximately three hours later.
The trial court in reaching its conclusion that plaintiff had failed to carry the burden of proof which requires a plaintiff in a workmen’s compensation case, as in other tort actions, to establish a case by a preponderance of the evidence, followed the legal principles enunciated in the Danziger case. We are impelled to agree with his finding that the evidence fails to establish by a preponderance of the evidence that the employee’s death in the instant case was occasioned by any unusual or strenuous duties that precipitated the heart attack.
For the foregoing reasons the judgment is affirmed at appellant’s cost