25 So.2d 625

**HEMPHILL v. TREMONT LUMBER CO.**

No. 37821.

Feb. 11, 1946.

Rehearing Denied March 18, 1946.

Julius T. Long, of Shreveport, for plaintiff, appellant, relator.

Theus, Grisham, Davis & Leigh, of Monroe, for defendant.

FOURNET, Justice.

The relatrix, Mrs. Edith Guin Hemphill, individually and for the benefit of her minor child, seeks to recover compensation from the Tremont Lumber Company under the Employer's Liability Act, Act No. 20 of 1914, for the death of her husband, who succumbed from a heart attack allegedly resulting from overheat and strenuous work during the course of his employment. The case is now before us on a writ of certiorari granted upon her application to review the judgment of the Court of Appeal for the Second Circuit affirming the judgment of the district court dismissing her suit.

Up until the afternoon of April 27, 1943, when he was suddenly stricken with a severe pain in the region of his heart that continued unabated until he died some forty-five minutes later, Thomas W. Hemphill, who had been employed by the defendant as a carpenter for some 20 years, was never known to have been seriously ill or to have suffered from heart trouble. He was 49 years old, weighed between 150 and 160 pounds, and was rather stockily built. On the morning of his death he left his home in the company of his brother-in-law, Ed Guin, as was his custom, to commute in Guin's car to his place of employment some six or seven miles away, taking with him a lunch prepared by his wife. Upon his arrival at work he and a fellow employee, Odus C. Lasyone, were assigned to re-roof a small house belonging to the defendant under the supervision of a foreman. To accomplish this purpose it was necessary for Hemphill and Lasyone to lay, tack and tar composition paper that was carried to the roof by them up a 12 or 13 foot ladder in rolls weighing between 90 and 100 pounds. Eight of these rolls were used in all, Hemphill and Lasyone each carrying two of the rolls to the roof in the morning and two after the noon hour, during which they took time out to eat their lunches. After the last of the rolls had been laid and tarred, some thirty minutes after Hemphill had taken the roll to the roof, the deceased came down the ladder wet with perspiration, took a drink of water from an ice keg, and sat down in the shade, holding his hand over his heart and declaring to his co-workers that he had a pain in that region. After sitting for a few minutes he declared the pain was no better and that he ought to go to the doctor's office. He then took another drink of water and walked a half or two-thirds of a mile down the road to the doctor's office, saying, upon his arrival there, "Doctor, do something for me, I am dying." The doctor thereupon put him on a table in one of the rooms and gave him a 1/4th of a grain of morphine and a 1/150th of a grain of atrophine. Then, upon Hemphill's suggestion that "if he could belch he would feel better," and his reply to the doctor's query that he had had milk

and corn for lunch, the doctor gave him diluted hydrochloric acid and pepsin without asking him any further questions or examining him. Hemphill died soon thereafter while on the way to his home in the car of Guin, who had been summoned by the doctor. An inquest was held by the coroner and the cause of Hemphill's death was given as "improper function of his heart."

According to his written opinion, the trial judge was unable to determine from the testimony introduced at the trial whether Hemphill's death had been caused by indigestion, angina pectoris, a clot of blood in the heart artery, or strenuous work, and he therefore dismissed the plaintiff's suit.

The Court of Appeal affirmed this judgment, being of the opinion that the relatrix had failed to establish the cause of her husband's death with legal certainty or to show that his death was brought about or accelerated by any act done by him during the course of his employment.

■ Since this case does not involve an accident causing external injuries or producing objective symptoms, we must look to the testimony of the medical experts to determine whether this is one of those cases that comes within our well-settled jurisprudence that the legal requirements are present to constitute an accident and an injury is compensable where excessive heat, heavy lifting or other strenuous efforts, although usual and customary, cause or contribute to a physical breakdown or accelerate its occurrence because of a pre-existing condition. See, Craft v. Gulf Lumber Co., 151 La. 281, 91 So. 736; Hicks v. Meridian Lumber Co., 152 La. 975, 94 So. 903; Jackson v. Travelers' Ins. Co., 180 La. 43, 156 So. 169; Wright v. Louisiana Ice & Utilities Co., 19 La.App. 173, 138 So. 450; Richey v. Union Paving Co., La.App., 151 So. 657; Brister v. Miller, La.App., 178 So. 284; Ozbolt v. Weber-King Mfg. Co., La. App., 193 So. 383; and Murray v. Mengel Co., La.App., 9 So.2d 818.

As pointed out by the Court of Appeal, "There is little testimony on the part of the lay witnesses in this case which is of material assistance to the Court in deciding the issues involved. * * * the testimony of these witnesses has definitely established the fact that the deceased began to suffer suddenly from a severe and agonizing pain in the chest, but * * * the record discloses nothing within the knowledge of these witnesses which would tend to establish any cause for decedent's suffering." We also agree with the finding of that court that the contention urged on behalf of the plaintiff that the ice water may have caused or contributed to Hemphill's death and the claim made by the defendant that his death resulted from acute indigestion are not supported by the record. But our appreciation of the testimony given by the medical experts, three of whom testified in behalf of the plaintiff and two in behalf of the defendant, does not coincide with that of the appellate court in the weight given to the testimony of the plaintiff's medical experts or in the conclusion reached by it with respect thereto.

■ We think the overwhelming preponderance of the evidence shows that the

strain on Hemphill's heart because of the strenuousness of the work and the heated conditions under which he was working were the motivating causes of his death. This was the unqualified and unanimous conclusion of all three of the plaintiff's expert witnesses and their testimony was not in any way weakened or refuted by the defendant's medical experts. In fact, there is evidence in their testimony corroborative of the conclusion reached by plaintiff's experts, as will be disclosed by an analysis thereof.

The error into which the Court of Appeal fell is very readily and easily detected, for a mere reading of the testimony of the medical experts will show that that court's reason for not giving any weight to the unanimous conclusion of the experts for the plaintiff is based on a false premise.

We fail to see how the Court of Appeal reached its conclusion that the testimony of Dr. D. V. Donaldson should be given little weight because he "could not definitely assign any specific type of heart trouble as the cause of death," for a review of his testimony discloses that he never expressed an opinion as to the different types of heart trouble or that he was ever interrogated with respect to them either on direct or cross-examination. The same may be said with reference to the appellate court's conclusion that the testimony of Drs. Charles Mosley and John Woodall was entitled to little weight because their opinions were based on facts not supported by the record. While the plaintiff's case was obviously not developed as well as it might have been, we think the court based its conclusions with

reference to the testimony of Drs. Mosley and Woodall on isolated expressions and portions of their testimony rather than on an analysis of their testimony as a whole in an effort to determine the ideas intended to be conveyed by these experts.

For example, the appellate court declared that Dr. Mosley's testimony was based on the fact that Hemphill's heart was not able to do the work required of it and that the failure of the heart was evidently caused by the heavy work and that "he positively predicated his opinion upon a history of the case which had been furnished him to the effect 'that the man climbed a ladder in hot weather and came down and took a pain in his chest and died.'" A review of this expert's testimony will show that he had been in the courtroom for some time previous to the time he was called to the stand and that he heard much of the evidence. Besides, a history of the case had been given him by the attorney for the plaintiff and by another physician. He expressed his conclusion as to the cause of Hemphill's death from a hypothetical question that fairly approximated the facts that had been brought out by the evidence adduced in the trial of the case and we think the isolated excerpt from his testimony quoted by the appellate court strengthens rather than weakens his testimony for these facts upon which the appellate court says he positively predicated his opinion were not only sustained by the record but they were the only symptoms by which the cause of Hemphill's death could be diagnosed, for, as Dr. Mosley explained, "* * * that is the only kind of symptoms you have with angina

pectoris, and the fact that it did kill him is proof positive that there was something wrong with him." In other words, as the doctor further explained, a diagnosis of angina pectoris is 100% history. A patient dies of angina pectoris and the only way in which it is possible from a medically scientific standpoint to ascertain the cause of his death is from the symptoms exhibited by him just previous to his death for there is no pathology of the heart remaining after death that would disclose the exact nature and extent of the lesions of the disease or the presence of any abnormalities in the organ.

Dr. Woodall, like Dr. Donaldson, was present in the courtroom and heard the evidence and he drew his own conclusions as to the strenuousness of the work done by Hemphill and the heat of the day on which he died from the evidence adduced during the trial of the case and thereon based his conclusion that Hemphill's death had been caused by these conditions that had precipitated the attack of angina pectoris.

We think the Court of Appeal fell into this error by adopting the view expressed by the defendant's lay witnesses that the work done by Hemphill just prior to his death was usual and customary and, therefore, could not be considered as strenuous, instead of being guided by the opinions and conclusions reached by the medical experts, based on unimpeachable medical science, that the man did die from angina pectoris which could have been caused only by the effect of exertion or emotion on the heart and who, from the facts of the case presented in court and given them in a hy-

pothetical question, concluded that Hemphill's death resulted from a strain on the heart caused by the work done by him in the heat of the day on which he died.

The principal medical witness for the defendant, Dr. J. W. Scott, was the only one of the experts who had an opportunity to observe Hemphill before his death and after his seizure by the attack which immediately preceded it and we agree with the Court of Appeal's findings that this witness was in error in his original diagnosis of acute indigestion and with its appraisal of the value to be placed on his opinion as expressed thusly in its opinion: "After thorough consideration of Dr. Scott's testimony, we are convinced that he has over-emphasized the effects of a possible attack of indigestion suffered by the decedent. Nor are we inclined to find that the witness' final diagnosis of coronary thrombosis is substantiated, for, in the final analysis, this diagnosis rests upon speculation and conjecture. It is evident throughout Dr. Scott's testimony that this case was unusual, that he was puzzled and uncertain, and that he was surprised and shocked by the suddenness of his patient's demise. The witness testified that Hemphill died of an occlusion caused by gas pressure, the exciting cause being indigestion, but failed to establish the correctness of this diagnosis with anything approaching legal certainty." Moreover, we find that a part of Dr. Scott's testimony is corroborative of that given by the plaintiff's experts for he admitted that any exertion such as climbing, or walking against a strong wind, "will excite angina pectoris."

Dr. John Mosley, the other expert for the defendant, had heard none of the evidence, and while he based his conclusion that Hemphill died of coronary thrombosis on a hypothetical question propounded by counsel for the defendant that included a fair statement of the facts of the case as adduced on the trial thereof, when he was asked if he thought Hemphill's work had any connection with this trouble he answered, "I doubt that it did," explaining that "otherwise he would have complained at the time of carrying the rolls of paper to the roof and that inasmuch as the pain struck him *some few hours* later the heart had had time to return to its normal status. * * *" (Italics ours.) Thus it may be seen by the doctor's qualified answer that he was not sure of his opinion. Besides it is obvious the doctor did not understand the complete facts of the case as reflected by the record for the pain struck Hemphill immediately after he descended the ladder, not some few hours after he carried the last roll of paper. Furthermore, whatever value might have been placed on his conclusion was neutralized when he admitted on cross-examination that exercise would augment and accelerate any kind of heart ailment and that dyspnea, or shortness of breath, must be considered as cardiac until proved to be the contrary and that such a condition is accelerated by exertion,—thus corroborating the experts of the plaintiff in this respect.

Moreover, it is our opinion that the experts for the plaintiff were not only positive in arriving at the conclusions they did, but that the reasons given by them for such conclusions were, to a lay mind, more sound and in keeping with medical science.

We therefore conclude that the plaintiff, as the surviving widow and for her minor child, is entitled to compensation at the rate of 46¼% of $24, Hemphill's average weekly wage, or $11.10 a week beginning April 27, 1943, for a period of 300 weeks with legal interest on each of these weekly instalments from their respective dates of maturity until paid.

■ Being within the limits sanctioned by law, the fees of the attorney for the plaintiff will be fixed according to her prayer at 20% of the amount awarded by this judgment, provided the net amount does not exceed $1,000.

The plaintiff has also prayed that the fees of the medical experts be fixed and that the same be taxed as costs of the case, and in brief has suggested that the fee of Drs. Woodall and Donaldson be fixed at $25 each and that of Dr. Mosley at $50.

Under the law of this state "witnesses called to testify in court only to an opinion founded on special study or experience in any branch of science, or to make scientific or professional examinations, and to state the results thereof, shall receive additional compensation, to be fixed by the court, with reference to the value of the time employed and the degree of learning or skill required." Act No. 19 of 1884.

■ Since there is no evidence in the record as to the value of the time employed by the experts who testified in this case, we think this matter should be referred to the lower court for determination.

For the reasons assigned, the judgments of the lower court and of the Court of Appeal for the Second Circuit are annulled and set aside and it is now ordered, adjudged, and decreed that there be judgment in favor of Mrs. Edith Guin Hemphill for herself individually and for the benefit of her minor child, William Kenneth Hemphill, and against the Tremont Lumber Company for compensation at the rate of $11.10 weekly beginning April 27, 1943, for a period of 300 weeks, with legal interest on each weekly instalment from their respective maturity until paid, and for all costs. It is further ordered, adjudged, and decreed that the fee of Julius T. Long as attorney for the plaintiff is hereby fixed at the sum of 20% of the amount awarded the plaintiff under this judgment, not to exceed $1,000; and that the case is hereby remanded to the lower court for the purpose of fixing the fees of the experts who testified on behalf of the plaintiff in this case and that such fees be taxed as costs in this case.

O'NIELL, C. J., and HAWTHORNE, J., do not take part.

On Application for Rehearing.

PER CURIAM.

In its application for a rehearing the respondent (defendant in the original suit) urges, among other things, that a rehearing is necessary to correct that part of the judgment it contends is contrary to the mandatory provisions of the compensation law, that is, that the award should be in

favor of Mrs. Hemphill and her son "for a period during dependency not to exceed 300 weeks," since it appears from the petition that the child will be 18 years of age before the 300 weeks have elapsed and there is always a possibility that Mrs. Hemphill will remarry.

Every judgment awarding compensation is subject to the mandatory provisions of the compensation law relative to changes in the dependency status and a rehearing is not necessary for this purpose. The other grounds urged for rehearing being without merit, the rehearing is therefore refused.