CULPEPPER, Judge.
The plaintiff, Milton Bertrand, seeks workmen’s compensation benefits for total and permanent disability allegedly resulting from a heart attack suffered while working for Courville Concrete Company. The defendant, Coal Operators Casualty Company, is the employer’s insurer. From an adverse judgment the defendant appealed. Plaintiff answered the appeal, seeking penalties and attorney’s fees.
There is little question that the heart attack suffered by plaintiff was an accident within the meaning of our Workmen’s Compensation Law.[1] Also, a clear preponderance of the evidence shows that plaintiff is now permanently and totally disabled by heart disease from hard manual labor. The substantial issue is whether there is any causal connection between the on-the-job heart attack and plaintiff’s pres--ent disabling condition.
The facts show that plaintiff, 56 years of age at the time of the heart attack, had been working for Courville Concrete Company for about 16 years performing strenuous manual labor, such as mixing, hauling and pouring concrete with a wheelbarrow into various types of forms. On July 9, 1964 he was working in the hot sun, pushing a heavy wheelbarrow filled with concrete when he “blacked out” and fell to his knees. He was taken to his family physician, Dr. B. J. Manuel, a general practitioner of Ma-mou, Louisiana. This physician found plaintiff suffering from weakness, dizziness, low blood pressure and a very fast and irregular heart beat. An EKG taken by Dr. Manuel was interpreted as showing “nodal tachycardia”, which Dr. Manuel described as being a “conduction defect” of the heart.[2] He found no coronary arteriosclerosis and said that plaintiff did not complain particularly of angina, i. e., chest pain.
The word “tachycardia” simply means excessively rapid heart beat, a symptom which can result from several different causes. The word “nodal” apparently has reference to the auriculoventricular and at-riculoventricular nodes. These are small rounded masses of special fibers located in the heart and forming part of the system which regulates the impulses for the *622 rhythmic beat of the heart.[3] Dr. Manuel diagnosed a defect in these nodes as the underlying heart disease which produced rapid heart beat, faintness, etc. on strenuous physical exertion in the hot sun. He was somewhat equivocal at one point (Tr. 59) in saying that “nodal tachycardia” is “a combination” of disease and symptom, but his testimony as a whole is to the effect that the defect in the node is the disease and the tachycardia (rapid heart beat) is a symptom.
Dr. Manuel prescribed digitalis, a standard drug for irregular heartbeat, and ordered plaintiff to refrain from hard labor for the remainder of the summer of 1964. On September 14, 1964, plaintiff was permitted to return to work.
He was doing the same kind of work for the same employer on June 1, 1965 when he “blacked out” again. On being taken back to Dr. Manuel, plaintiff’s complaints and the doctor’s diagnosis were essentially the same as in 1964. Plaintiff was given an extra dose of digitalis and sent home for rest. In two days he recovered from all apparent effects of the attack. However, Dr. Manuel decided that since plaintiff had suffered two attacks he should not return to that type of work for fear of a “full blown coronary”, which could result in death. Plaintiff has not returned to work since the attack of June 1, 1965.
During 1964, Courville Concrete Company was insured by Highlands Insurance Company, which settled plaintiff’s claim arising out of the 1964 episode for the sum of $1,000. Plaintiff sued the instant defendant, Coal Operators Casualty Company, who was the employer’s insurer at the time of the 1965 episode.
At the request of defendant, plaintiff was examined on October 20, 1965 by Dr. Rufus Craig, a specialist, certified by the American Board of Internal Medicine, and who has practiced this specialty in Alexandria for the past 10 years. Dr. Craig made a complete physical examination, including electrocardiograms, on two occasions, October 20, 1965 and September 2, 1966. His diagnosis differed substantially from that of Dr. Manuel. Dr. Craig’s opinion is that plaintiff has progressive coronary arteriosclerosis with angina. He explained that both the 1964 and the 1965 heart attacks were precipitated by physical exertion but that, in the absence of any finding of damage to the heart tissue, he concluded that after each attack the status of the heart was the same as it was preceding the attacks. Dr. Craig makes this clear in the following portion of his testimony:
“Q In this particular case did you see any indication of trauma or overexertion brought on this ultimate diagnosis that you described?
A The angina pectoris was precipitated by — if you consider physical exertion trauma, yes, in that during the effort that he was engaged in, the demand for blood for the heart was greater than these narrowed, sclerosed coronary arteries were able to provide at that particular time. Therefore, he had an inadequate oxygen supply to the heart muscle with resultant pain. When he ceased his activity the demand decreased, the supply caught up with the demand, the pain ceased. In other words angina pectoris is a syndrome which is completely reversible, once the episode is over with, the status of the heart is as it was preceding the attack of angina.”
Dr. Craig would not say whether plaintiff is presently disabled from hard manual labor. He suggested plaintiff could be given a series of “graded exercises” under a doctor’s close observation to determine how much physical exertion his heart would tolerate. Of course, this is in legal effect an opinion that plaintiff is disabled until such tests could be completed.
*623 At the trial, plaintiff called as an expert witness Dr. Roderick P. Perron, a general practitioner of Mamou. This physician had never examined or treated plaintiff but he had access to the records of Dr. Manuel (who has since left the practice of medicine and gone to law school), as well as all of the EKGs and the depositions of both Dr. Manuel and Dr. Craig. In answer to lengthy hypothetical questions, Dr. Perron agreed essentially with the diagnosis of Dr. Craig except that he expressed a definite opinion that due to coronary arteriosclerosis the plaintiff is permanently disabled from hard manual labor. This diagnosis was at least partially based on Dr. Perron’s personal knowledge of history of this type of heart disease in plaintiff’s family.
The essential issue is whether this expert medical testimony shows any causal connection between the 1965 heart attack and plaintiff’s present disability. The question is very similar to that presented in Seals v. Potlatch Forests, Inc., La.App., 151 So.2d 587 (3rd Cir. 1963; certiorari refused). There, the plaintiff, who was suffering from progressive coronary arteriosclerosis sustained a heart attack while working as a lumber grader. As in the present case, plaintiff recovered from this attack without any residual infarct (dead heart tissue) or other damage to the heart. All of the expert medical testimony was to the effect that after the attack plaintiff’s heart was in the same condition as it was before; and that the attack did not cause, aggravate or accelerate plaintiff’s heart disease. In denying compensation we quoted from the landmark case of Nickelberry v. Ritchie Grocer Company, 196 La. 1011, 200 So. 330 (1941) as follows:
“ ‘The mere fact that a workman develops heart disease while employed by another does not entitle him to compensation. The employer is not the insurer of his employees. There must be an accident to furnish the basis of any such claim, that is to say, something sudden, undesigned or unexpected and that accident must either cause or aggravate the disease which is the cause of the disability.’ ” (Italics supplied)
Plaintiff attempts to distinguish Seals v. Potlatch on the grounds that it involved coronary arteriosclerosis whereas the present case concerns an entirely different condition, “nodal tachycardia”. Of course, he bases this argument on the fact that the treating physician, Dr. Manuel, made the latter diagnosis. However, we think a clear preponderance of the expert medical testimony is to the effect that plaintiff did not suffer from nodal tachycardia but instead from progessive arteriosclerosis of the heart. This was not only the opinion of Dr. Craig, who is better qualified as a specialist by training and experience in this particular field, but also of plaintiff’s own witness, Dr. Perron.
However, even if we were to assume that Dr. Manuel is correct in his diagnosis of “nodal tachycardia” a “conduction defect” in the system which supplies impulses for the heart’s rhythmic beat, he did not in any portion of his testimony express an opinion that this condition was either caused, aggravated or accelerated by the two attacks.
Dr. Manuel gave his diagnosis as follows :
“Q Was your diagnosis — what was your diagnosis in June, ’65; what would you call his condition then?
A The man really has — well, he has— he has a condition defect is what I think he has within his heart, and the tracks or the fibers that conduct the impulses to the heart that make it beat. As long as the man is not working, and is not working hard and getting hot, he gets along all right. It seems to me that from the way it happened that it’s associated with the man working hard and getting an increase in temperature is where he has his spells.”
*624 Then when asked whether this “conduction defect” existed before the heart attacks, Dr. Manuel stated:
“It would be hard for me to say that the condition at the morning he came in was existing before, because I have to take into consideration the man has been working all his life, and he never had the trouble, so it would be hard for me to say that the condition existing that morning had been the same for years before. It would even be harder from the fact that two years before I placed him under general anesthetic and repaired two hernias on him. It would be hard for me to say that the man really had a condition that was the cause of him coming in like the morning — like what he had when he came in that morning. I can’t eliminate the possibility that there could have been something there that could have contributed to it, but I also can’t — I also have to take into consideration that whatever — everything as a whole that the man’s work and what he does and such definitely plays a part in his disability.”
It is our understanding of the last quoted portion of Dr. Manuel’s testimony that it would “be hard” for him to say the condition existed before the attack but he could not eliminate the possibility that it did. This means to us that he would express no firm opinion as to whether plaintiff had this defect in the heart node before the attack. Dr. Manuel makes this more clear when he concludes his testimony by saying:
“Q Your ultimate diagnosis is nodal tachycardia.
A That’s about all I can say, because I really can’t — I can’t say from my EKG.’s that the man has circulatory trouble or that it’s secondary to ar-teriosclerotic heart disease. I can’t really say that either from my EKG.’s. The only thing I can say is that he has nodal tachycardia secondary to a conduction defect, which is aggravated on working, and getting hot, and such as that."
We have carefully read Dr. Manuel’s testimony and find no opinion by him to the effect that this “conduction defect” was caused, aggravated or accelerated by the 1964 or the 1965 episodes. He says this defect is the underlying cause of the symptoms which manifest themselves on exertion, but he does not say the defect itself was caused or made worse by the attacks.
One of plaintiff’s arguments which should be mentioned is that Dr. Manuel found no angina (chest pain) immediately after the attacks; hence the condition was not coronary arteriosclerosis with angina. Plaintiff’s own witness, Dr. Perron, said that the symptoms described were “true angina, even though the facts don’t bring out pain. I think it was a variation of angina, at the very least * * * ” Of course, as stated above, Dr. Perron agreed with Dr. Craig that plaintiff has coronary arteriosclerosis with angina.
We conclude, as we did in Seals v; Potlatch, that the expert medical testimony does not support a conclusion that plaintiff’s heart disease, whether it be a defect in the node, or arteriosclerosis, was either caused, aggravated or accelerated by these two episodes. He had temporary attacks, from which he recovered without residual disability attributable to the work-connected accident.
For the reasons assigned, the judgment appealed is reversed and set aside. It is now ordered, adjudged and decreed that there be judgment herein in favor of the defendant, Coal Operators Casualty Company, and against the plaintiff, Milton Bertrand, dismissing plaintiff’s suit. All costs in the lower court, as well as the costs of this appeal, are assessed against the plaintiff.
Reversed and rendered.
On Application for Rehearing.
En Banc. Rehearing denied.

. LSA-R.S. 23:1021 (1); Nickelberry v. Ritchie Grocer Company, 196 La. 1011, 200 So. 330; Hemphill v. Tremont Lumber Company, 209 La. 885, 25 So.2d 625.

. Actually, this and a later EKG were sent by Dr. Manuel to Dr. Seabury, a heart specialist in New Orleans, for interpretation. Dr. Manuel used Dr. Sea-bury’s report to reach a diagnosis.

. See Schmidt’s Attorneys’ Dictionary of Medicine, pages 104,106, 552 and 785.