DOUCET, Judge.
In this workmen’s compensation case, plaintiff seeks benefits as the widow of Lee Roy Pennington who died on January 6, 1979 as the result of a dissecting aneurysm of the aorta. The issue presented is whether plaintiff established a causal connection between the heart attack and employment. We affirm the trial court’s denial of benefits.
Mr. Pennington was a welder’s foreman with defendant-appellee, Reading and Bates Construction Co. His job required him to supervise 20 to 30 men constructing a pipeline through a muddy rice field near Crowley, La. On the day in question, January 6, 1979, Mr. Pennington arrived at the construction warehouse prior to the work crew. He boarded a bus which was pulled through the mud to the job site. Upon arrival at the job site, he walked around awaiting work and suddenly began to complain of excruciating pain. He was then taken via bulldozer approximately one mile to a road where a co-employee drove him to a hospital in Crowley. After reaching the hospital, he was transferred to a hospital in Lafayette and placed under the care of Dr. James Bozeman. Dr. Bozeman diagnosed plaintiff’s affliction as a dissecting aneurysm of the aorta wall. Despite Dr. Boze-man’s efforts, Mr. Pennington died on the operating table the same day because of the dissecting aneurysm. Following the worker’s death, the defendant paid death benefits from the date of the accident until 19 months later when benefits were terminated without notice. Suit followed.
At trial, plaintiff alleged that on-the-job stress caused the accident. Dr. Bozeman, a cardiovascular surgeon, testified that a dissecting aneurysm is commonly associated with hypertension patients and the person with a job involving high stress is more likely to sustain such an injury. Similarly, Dr. Mehmood Pattel, also a cardiologist, testified that he was of the opinion that a rise in Mr. Pennington’s blood pressure could have caused the accident. However, Dr. Pattel was unable to ascertain whether the rise in blood pressure was related to plaintiff’s work activity the date of the accident or if it was a long-standing condition. Neither physician was aware of any event or incident at work which could have reasonably caused Mr. Pennington’s dissection. However, they both stated that stress, or other physical exertion could have caused the heart attack. Dr. Pattel further explained that a person’s blood pressure goes up and down throughout the day depending on what they are doing.
Leo LaCaze, a bulldozer operator on the project under Pennington’s supervision, testified that Pennington had done no actual work on the morning of the accident. La-Caze did note that Pennington was looking pale when he got off the bus. Pennington had lived with Robert Taylor the last four weeks of his life at a nearby motel and Taylor stated that he could not list one specific problem that would have caused any undue stress to Pennington on the job site, nor could he cite any examples of his anxiety or concern that Pennington was experiencing which could have reasonably been related to his accident. Prentice Brantley, Pennington’s immediate supervisor, testified that there were no personal problems on the job that he was aware of and he had received no complaints or worries that could have concerned Pennington during his work. Both Brantley and Taylor testified that the work was on schedule and the crew was not short-handed. Nettie Pennington also testified that her husband had been a welding foreman for several years before his death and enjoyed his job very much. She knew of nothing on the job that was causing her husband any particular problems and knew of nothing that was preventing the job from running smoothly. The decedent’s daughter, Virginia Morrison, also confirmed that her father loved his line of work and she was not aware of any anxiety or worries or concerns that her father may have had on this particular job.
At the conclusion of the trial, the trial judge found that the plaintiff failed to prove a work-related injury and dismissed plaintiff’s suit.
*1175 Prom that judgment, plaintiff appeals and cited the following specifications there: (1) the trial court erred in holding that the plaintiff had not proved a causal connection between her husband’s vascular accident and his employment; (2) the trial court erred in holding that a workmen’s compensation claimant must show extraordinary stress which causes a vascular accident in order to recover benefits; and (3) the trial court erred in not finding that the defendant arbitrarily and capriciously suspended compensation payments.
Heart attacks have been found to satisfy the statutory requirements of personal injury by accident. Fields v. Sperry Rand Corp., 343 So.2d 339 (La.App. 2nd Cir.), cert. denied 345 So.2d 902 (La.1977); Roussel v. Colonial Sugars Co., 318 So.2d 37 (La.1975); Brown v. Kaiser Aluminum & Chem. Corp., 250 So.2d 99 (La.App. 4th Cir.), cert. denied 259 La. 807, 253 So.2d 66 (1971); Hemphill v. Tremont Lumber Co., 209 La. 885, 25 So.2d 625 (1946). The worker who experiences his heart attack/accident during an authorized rest period does so in the “course of his employment”. Smith v. Walker, 35 So.2d 766 (La.App. 2nd Cir.1948); St. Alexandre v. Texas Co., 28 So.2d 385 (La.App.Orl.Cir.1946). The plaintiff in a workmen’s compensation action however, has the burden of establishing by a preponderance of the evidence that the accident arose out of the employment. Hammond v. Fidelity and Casualty Co. of New York, 419 So.2d 829 (La.1982); Lucas v. Insurance Company of North America, 342 So.2d 591 (La.1977); Gradney v. Vancouver Plywood Co., 299 So.2d 347 (La. 1974); Prim v. City of Shreveport, 297 So.2d 421 (La.1974); Johnson v. Travelers Insurance Co., 284 So.2d 888 (La.1973).
In McDonald v. International Paper Co., 406 So.2d 582 (La.1981) the Supreme Court re-affirmed the principle stated in Ferguson v. HDE, Inc., 264 La. 204, 270 So.2d 867 (1972), that unusual mental or emotional strain could produce a compensable accidental effect in a worker. McDonald’s stress included the fact that his employer had recently announced a mill closure and he was worried about that and the impending loss of his job. Also, the crews he supervised were shorthanded. The court, citing Ferguson, stated that “extraordinary mental or emotional work-related stress” could produce a compensable accident.
Allor v. Belden Corp., 393 So.2d 1233 (La. 1981) provides a presumption in favor of the employee who is in good health before the accident, but only when “... there is a reasonable possibility of causal connection between the accident and the disabling condition.”
The requisite link between the heart attack and employment was addressed in Adams v. New Orleans Public Service, Inc., 418 So.2d 485 (La.1982). In Adams, the Supreme Court held that a worker who in the course of employment suffered a shortness of breath and chest pains due to angina pectoris was entitled to workmen’s compensation benefits where the attacks came suddenly and unexpectedly. The angina pectoris resulted from arterioslerosis, a condition of the arteries which had gradually worsened over the years, rather than from extraordinary stress or exertion. Nevertheless, benefits were due because the attacks themselves came suddenly, unexpectedly, without warning and in the course of plaintiff’s employment. On rehearing, the court, in clarifying its reasons for awarding compensation, noted that the medical evidence was unanimous that stress caused angina pectoris and stated “It is clear that heat and physical stress of Adams’ employment brought on the painful, sickening incident on his last night of work.” 418 So.2d at 491. The court specifically noted that the fact the heart attack occurs on the job does not end the inquiry relative to causal connection.
During the same term the Louisiana Supreme Court again addressed the relationship between myocardial infarctions (heart attacks) and employment in Guidry v. Sline Industrial Painters, Inc., 418 So.2d 626 (La. 1982) discussed in Johnson, Recent Developments in the Law 1981-1982 Workers Compensation, 43 La.L.Rev. 613, 617-621. In Guidry, this court, through the trial judge *1176 herein, reversed the trial court’s denial of benefits to the widow of a heart attack victim, believing the original opinion in Adams mandated recovery where the heart attack occurred suddenly on the job. 406 So.2d 303 (La.App. 3rd Cir.1981). The Supreme Court affirmed on other grounds. In reaching the result, the court stated: “... we expressly reject the following language in Adams on original hearing: ‘where an injury occurs suddenly or unexpectedly it is compensable despite the absence of any physical stress or exertion’, and ‘[t]he only pertinent inquiry is whether in fact, the accident [heart attack] happened on the job.’ ” 418 So.2d at 628. The court then reviewed the jurisprudence as follows:
In awarding compensation based on heart incidents, the early decisions focused on physical exertion and heat. In Hemphill v. Tremont Lumber Co., 209 La. 885, 25 So.2d 625 (1946), a carpenter’s normal activities for the day in question required him to carry four 95 pound rolls of composition paper up a ladder to the roof and work there in the sun. When he finished the job, he complained of severe chest pains and died forty five minutes later on his way home from visiting the doctor. The Court found supra, 25 So.2d at 626-627 that:
Since this case does not involve an accident causing external injuries or producing objective symptoms, we must look to the testimony of the medical experts to determine whether this is one of those cases that comes within our well-settled jurisprudence that the legal requirements are present to constitute an accident and an injury is compensable where excessive heat, heavy lifting or other strenuous efforts, although usual and customary, cause or contribute to a physical breakdown or accelerate its occurrence because of a pre-existing condition. (Citations omitted) (Emphasis supplied)
Other similar cases followed. Sepulvado v. Mansfield Hardwood Lumber Co., 75 So.2d 529 (La.App. 2d Cir.1954); Clifton v. Arnold, 87 So.2d 386 (La.App. 1st Cir.1957); Talbot v. Trinity Universal Ins. Co., 99 So.2d 811 (La.App. 1st Cir.1958); Brian v. Employers Casualty Co., 111 So.2d 161 (La. App. 2d Cir.1959); McKnight v. Clemons, 114 So.2d 114 (La.App. 1st Cir.1959); Andrepont v. Calcasieu Paper Co., 131 So.2d 585 (La.App. 3d Cir.1961); Spivey v. Aetna Casualty & Surety Co., 127 So.2d 297 (La. App. 4th Cir.1961); Young v. Old Colony Insurance Co., 150 So.2d 892 (La.App. 4th Cir.) cert. refused 244 La. 472, 152 So.2d 564 (1963).
What might be referred to as the current jurisprudence in this Court in heart attack worker compensation cases begins with Bertrand v. Coal Operators Casualty Co., 253 La. 1115, 221 So.2d 816 (La.1969), the leading case insofar as establishing the rebut-table causation presumption between the occurrence of an accident and the onset of disability.7 That case in no way lessened the requirement of proving a causal relationship between the employment and the accident. Bertrand was a laborer who, this Court noted, supra, 221 So.2d at 825, “[a]s a principal part of his employment ... was required to mix concrete, transport it by wheelbarrow, pour it into forms and otherwise perform heavy labor.” The court said plaintiff’s hard work and exertion caused the disabling disease to manifest itself. More particularly, the exertion, even though usual for Bertrand and the job duties he had performed for some fifteen years, combined with his arteriosclerosis and a pre-existing defective artioventricu-lar node, caused a conduction fault in his heart. Review of the jurisprudence by Chief Justice Fournet, dissenting from the majority view on original hearing in Bertrand, highlighted the Hemphill distinction between instances of real although usual and customary exertion on the one hand, and instances involving external trauma on the other. The Bertrand majority on rehearing accented that exertion from usual and customary activities may serve as a cause of a vascular accident. That finding is certainly not a determination that there need be no relationship between the work and the accident. Rather it is just the contrary.
Three years later, Bertrand was cited in Ferguson v. HDE, Inc., 270 So.2d 867 at 869 (La.1972) for the proposition that
*1177 extraordinary physical stress and strain is not essential to the definition of disabling accident: when the performance of the usual and customary duties of a workman cause or contribute to a physical breakdown, the statutory requirements for an accidental injury are present.
Ferguson was a mental stress/stroke case8 which overruled Danziger v. Employers Mutual Liability Insurance Company of Wisconsin, 245 La. 33, 156 So.2d 468 (1963) and held that physical disability resulting solely from extraordinary mental or emotional causes qualified as an injury by accident, and was compensable.
Since then, the two cases, Bertrand and Fergusoti, have been cited for the general proposition that only the “usual and customary actions, exertions ... of the employment” are required. Leleux v. Lumbermen’s Mutual Insurance Co., 318 So.2d 15 (La.1975); Roussel v. Colonial Sugars Co., 318 So.2d 37 (La.1975). Interestingly, in each of these cases, the usual and customary actions, constituted real and significant instances of exertion and stress which would under any analysis constitute more than the exertion and stress associated with the more or less sedentary activities of the average non-worker. Leleux involved an obese truck driver with a history of high blood pressure who suffered a cerebral vascular accident, or stroke, and was found near the rear of his truck. Besides shoveling rice he had hauled four loads of rice and was at the time having his truck filled with a fifth load. The Roussel plaintiff was a machinist and although the Court repeated the now familiar language of “usual and customary,”9 the facts and the conclusions of the Court did not represent any extension of the earlier jurisprudence.10
In the instant case, the record reveals that decedent was engaged in manual labor as a machinist in the refinery at the time of the fatal heart attack. He was performing the usual and customary duties of his employment. We have no hesitancy in concluding that these activities were strenuous in pa ture. There is no dispute that decedent did, in fact, have a history of hypertension and that he did suffer a myocardial infarction resulting in immediate death while performing the duties of his employment. It is established by the medical testimony that the myocardial infarction suffered by decedent on the job which resulted in his death could have been caused or precipitated by the usual and customary actions and exertions of decedent’s duties as a machinist. Causal connection was thus clearly established by a preponderance of evidence in this case. Roussel, supra. (Emphasis supplied)
That brings us to our Adams decision on original hearing11 and more particularly, the Court of Appeal’s application of that decision to the facts in the instant case.
Contrary to the language in Adams (and the Court of Appeal reference to that language ^), the cases out of this Court, however liberal they might occasionally have been insofar as finding sufficient the amount of stress or exertion which has contributed to a given heart accident, have nonetheless never before taken the position the absence of physical stress or exertion is of no moment, or that the occurrence of a heart attack on the job is the only relevant inquiry.
In summary the jurisprudence of this Court has been fairly liberal in linking ensuing disability to admitted work accident (for example, there is the Bertrand presumption of causal connection between accident and disability), and insofar as linking work accident to work stress and exertion without the necessity for a traumatic incident. But there has been in this Court’s jurisprudence no determination that there exists a presumption that a heart accident sustained at work is caused by the employment.13 Also, except for Adams on original hearing (and see the Court of Appeal decision in Beaty v. Thiokol Corp., 414 So.2d 1292 (La.App. 2d Cir.1982) (writ denied, La., 416 So.2d 114, 1982: “Result Correct”), the cases in this Court have always required that there be some causal relation between employment and accident. This conclusion *1178 that a heart accident must be causally related in part, however slight, to the employment, is no new or novel approach to applying the compensation law. It is implicit, and occasionally express, in the cases discussed hereinabove. Professors Malone and Johnson observe in their treatise, supra at 437-39: “[t]he required ‘injury by accident’ has thus been found to have occurred in instances of heart attack ... even when these occur during the employee’s regular work in the regular way, if a causal relationship between working conditions and disability can be found,” (emphasis supplied). The authority given for this statement include our Roussel and Hemphill opinions and intervening appellate decisions.
There is admittedly real difficulty in proving or disproving work related causation in heart accidents because of the fact that a pre-existing vascular infirmity can produce disability irrespective of outside influences. Nonetheless, considering the often divergent and uncertain views of medical practitioners and the necessarily different perspectives of doctors and lawyers on this problem in compensation cases,14 we have decided in prior cases that work related stress or exertion preceding a heart attack bears a causal relationship to that heart attack, at least in part, even where there is a pre-existing heart disease.
There is no presumption, however, that a vascular accident occurring on the job is caused by the employment. There must be a causal link between the employment, or the work, and the accident. And of course, the law imposes upon the plaintiff in compensation cases, as it does in other civil cases, the burden of proving that causal link by a preponderance of the evidence. Prim v. City of Shreveport, 297 So.2d 421 (La.1974).
This burden of plaintiff’s is to show by a preponderance of the evidence that the work effort, stress or strain in reasonable probability contributed in some degree to the heart accident. Anything less and it can hardly be said that the accident arose out of the employment or that the employment in any measure contributed to the accident.
If the physical exertion, stress, or strain on the job, and preceding the infarction, is no more than the worker would likely have experienced in a non-work situation, the attack may be the result of the natural progression of the pre-existing disease rather than the result of the employment activity.
This reality has led Professor Larson to suggest a rule which we draw upon to resolve this amorphous legal problem. See generally: IB. A. Larson, Workmen’s Compensation § 38.83, 7-233 (1980).
For the heart accident to arise out of or be connected with the employment, the exertion stress or strain, acting upon the pre-existing disease, must be of a degree greater than that generated in everyday non-employment life15 (e.g., as compared to the more or less sedentary life of the average non-worker).
In other words if the activities in which the worker with a pre-existing heart disease is engaged, whether for his job usual and customary or not, entail exertion, stress or strain greater than would be involved in everyday non-employment life and he experiences a heart accident, he has made a prima facie showing that the accident arose out of or was connected with, the employment.16
However, simply being at work on the job is not enough, since at the time of and for an appreciable period before the accident such worker (i.e., with a pre-existing heart disease) may not have been engaged in his usual stressful activities, or his usual work may have been of a sedentary nature, or may have involved no physical stress or exertion beyond that generated in everyday non-employment life.17 In either of these latter cases, it is difficult to say that the accident arose out of the worker’s employment rather than that the accident arose out of or was prompted simply by the preexisting heart disease, (footnotes omitted). Turning to the facts the court noted that Guidry’s role as an industrial painter on the *1179 day of the accident was to brace a ladder on which his co-employee was painting and move it as required. Guidry suffered the heart attack during a work break and died seven days later. Contrary to the trial judge, the Supreme Court found that Gui-dry’s activities on the day of the heart attack were marked by stress, exertion, and strain greater than generated in everyday non-employment life. As noted by Chief Justice Dixon in his concurring opinion, “Needed clarity and simplicity is not here accomplished.”
Subsequently, the Supreme Court reviewed the decision of this court in Chapman v. Belden, 428 So.2d 396 (La.1983) wherein the worker suffered a heart attack after his weekend duty with the National Guard. The trial judge found the claimant established a causal connection between his stressful employment activity and the disability occasioned by his heart attack suffered five hours after work while at home. We affirmed. 414 So.2d 1283 (La.App. 3rd Cir.1982). The Supreme Court reversed, finding plaintiff’s “duties were not strenuous and did not involve any unusual stress or strain.” Additionally, the court noted there was “no evidence of any incident occurring during the course of his employment which marked the onset of his disability.”
See also: Ebarb v. Ins. Co. of North America, 424 So.2d 1266 (La.App. 3rd Cir. 1982), where it was held that severe injury to an employee’s hand and consequent anxiety bore a causal relation to his fatal heart attack two weeks later; Schneider v. Strahan, 422 So.2d 1377 (La.App. 1st Cir.1982) where benefits were denied due to the lack of evidence that the worker’s heart attack during off-hours was specifically related to any on-the-job incident; and Williams v. Southern Builders, Inc., 357 So.2d 579 (La. App. 1st Cir.1978).
In summarizing the jurisprudence (as of 1980) concerning causal connection between employment and heart attacks, Malone and Johnson have stated:
The present state of affairs may be summarized as follows. If the symptoms of heart attack or stroke occur during normal working hours, it is very likely that the claimant will be able to establish the necessary causal connection unless the medical testimony is very persuasive in the opposite direction. The requirement of showing unusual stress or strain is not likely to be imposed. If the symptoms occur outside normal working hours, the claimant will have a much more difficult task in discharging the burden, but will certainly be aided if unusual stress or strain on the job that day could be shown. To that extent, the “extraordinary stress” cases may prove helpful. If the symptoms occur outside normal working hours and no unusual stress or strain can be shown, or other relationship to the employment, it is likely that the court will conclude that the necessary causal connection has not been established.
Worker’s Compensation § 261 in 13 La. Civ.L. Treatise 581-582 (2nd Ed.1980).
Returning to the facts of this case, Pennington went to work on January 6, 1979. He rode a bus to the job site, exited and relaxed momentarily. At the time he made known his chest pains, he had yet to do any work. Pennington was pale and weak. He was transported to a nearby hospital where he died the same day. There was no exertion greater than normal nonemployment life on the date in question. There was no risk shown distinct from that to which the general public is equally exposed. More specifically, there was no showing of increased risk due to stress — no risk greater than nonemployment life. In concluding that Pennington died as the result of “neutral risk”, the trial judge carefully reviewed the implications of Guidry and stated in reasons for judgment:
“The heart specialists, one a cardiovascular surgeon, the other a cardiologist, were definitely of the opinion that the cause of death was the dissecting aneurysm or the rupture of the inner walls of the aorta which permitted the blood to get in between the walls and, since it was impossible to eliminate this condition which had built up in the aorta or its sides, death resulted.
*1180 All the doctors testified that, although it was not known with certainty just what caused this condition, the prevailing medical opinion is that it results from a weakened artery and usually is accompanied by a high blood pressure or hypertensive condition. However, none of the doctors, with the exception of Dr. But-tross who expressed an opinion as to a hypothetical question, stated with any degree of positiveness just what actually caused Mr. Pennington to suffer this attack. All of them recognized that it could have been brought on by either physical or mental strain or exertion that would cause a person’s blood pressure to rise and where the artery is weak then rupture; however, none of them were able to say with any degree of certainty just what Mr. Pennington had done that day or prior thereto which would have caused his blood pressure to rise or even whether or not his blood pressure was excessive at the time of the attack. However, he did have an extremely high blood pressure when he was at the hospital and it was taken.
Mrs. Pennington, the widow, testified that, although Mr. Pennington was always concerned about his job, and there’s no question but what he was a good worker and like any good executive was concerned about the welfare of his men and with their problems, that there was nothing in particular that he had related to her either the day before when she talked to him on the telephone or for some time previously when he was at home. His daughter testified that she thought he looked tired when he was at her house, I believe between Christmas and New Year’s; however, she said nothing about this at the time her deposition was taken.
Fellow workers testified that the job was going smoothly, except that the pipeline was being laid through rice fields which were extremely muddy at that time; however, they were keeping up with their timetable or schedule. Although there was some absenteeism from time to time, this was nothing unusual and no problem was created thereby because the absence of one or two welders on the crew would not shut down the job or delay it considerably.
Other than Mr. Pennington’s having walked around at the bus when he alighted therefrom, there was no indication that he had done anything at all that would have brought on any stress or strain that would give rise to raising his blood pressure. However, the doctors testified that everyone’s blood pressure rises from the time they get up in the morning until they go on about their regular duties, whether it be at their employment or wherever it may be. Also, smoking causes a person’s blood pressure to rise.
As I appreciate the law, when a person suffers a heart attack of some nature on the job it does not take much proof to establish that it is a work-related injury, but still you must show that there has been some strain or stress or exertion caused by the work that is not normally experienced by the person immediately prior to or close to the happening of the attack.
In this case, I don’t find anything of this nature in the record. I realize that this gentleman was an excellent supervisor and foreman, concerned about his men, concerned about the progress of the job, but there is no evidence of any problems in this connection that would cause any unusual strain or stress so far as this Court is able to determine.”
Causation is a question of fact as to which the trial court’s determinations are entitled to great weight and will not be disturbed absent manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978); Roussel v. Colonial Sugars Co., supra; Canter v. Koehring Co., 283 So.2d 716 (La.1973). We find no manifest error in the trial court’s determination that the plaintiff failed to establish a causal relationship between Penniqgton’s employment and the accident.
*1181 For the reasons set forth hereinabove, the judgment of the trial court is affirmed at plaintiff’s cost.
AFFIRMED.