EDWARDS, Judge.
This is a suit for workmen’s compensation benefits on behalf of decedent, Clifford William Nix, by his widow, Eva Agnes Nix, and their three children. Mrs. Nix, the principal plaintiff herein, originally sued in tort for wrongful death, naming as defendants the City of Houma; B.J. Hughes, Inc., a corporation which employed Mr. Nix; and City of Houma Electric, Water & Gas Utility Company. This action for workmen’s compensation against B.J. Hughes, Inc., was severed and tried separately.
Mr. Nix was 64 years old with a preexisting diabetic condition but no history of heart disease. He was employed by B.J. Hughes, Inc., to prepare and present safety seminars.
On January 22, 1980, Mr. Nix gave a seminar in Houma, Louisiana. He had driven there the night before from his home in LaPlace, about 60 miles away, to avoid making the round trip in one day. He stayed overnight in Houma and had a full night’s rest. Mr. Nix appeared ill when he arrived at the seminar in the morning. At lunchtime he declined to eat anything, in spite of his diabetic condition.
At about 3:45 p.m., upon conclusion of the seminar, Mr. Nix was driving his Hughes company car on the way back to his office in Metairie, Louisiana. A light rain was falling. Mr. Nix had driven for only a few minutes and was still within the limits of Houma when he suffered a fatal heart attack at the wheel. His car drifted to the side of the road and struck a utility pole. A police officer arrived shortly and tried to revive him with CPR. This failed, and Mr. Nix was pronounced dead on arrival at Terrebonne General Hospital.
Bench trial was held in January, 1984, with judgment for Mrs. Nix. She was awarded death benefits under workmen’s compensation at the maximum rate, together with interest and costs. Motion for new trial was denied, whereupon B.J. Hughes, Inc., brought this suspensive appeal.
The only question before this court is whether Mr. Nix’s heart attack was sufficiently work-related to entitle plaintiff to death benefits under the workmen’s compensation statute. Defense counsel raises three assignments of error in her brief, but they present only different aspects of the same issue.
LSA-R.S. 23:1031 sets out the requirements for a successful claim:
If an employee ... receives personal injury by accident arising out of and in the course of his employment, his employer shall pay compensation in the amounts, on the conditions, and to the persons hereinafter designated.
There is no doubt that Mr. Nix was “in the course of” his employment at the time of his death. It was firmly established at trial that he was in transit from the seminar to his office, and that his working day had not yet ended. This being true, the question then becomes whether the heart attack “arose out of” his employment. The jurisprudence provides a fairly comprehensive set of rules for determining the answer.
To begin with, the heart attack incident must result from some risk which affects the employee on his particular job and which would not affect him either in some other kind of work or if he didn’t work at all. Stated another way, the heart *548 attack must be “causally related” to the employment. The burden of proof is upon plaintiff to show by a preponderance of the evidence that the stress of the job was a reasonably probable cause or contributing factor to the heart attack. This stress must be greater than that which is normal for a person who does not work. Guidry v. Sline Industrial Painters, Inc., 418 So.2d 626 (La.1982); Prim v. City of Shreveport, 297 So.2d 421 (La.1974); Pennington v. Reading & Bates Construction Co., 432 So.2d 1173 (La.App. 3d Cir.1983).
Secondly, plaintiff must offer medical proof that his employment exertion was a contributing cause of his heart attack. Schneider v. Strahan, 449 So.2d 1338 (La.1984).
We note here that simply being at work or actively doing one’s job is not proof of causality. Our Supreme Court has said, in this regard:
There is no presumption, however, that a vascular accident occurring on the job is caused by the employment. There must be a causal link between the employment, or the work, and the accident. And of course, the law imposes upon the plaintiff in compensation cases, as it does in other civil cases, the burden of proving that causal link by a preponderance of the evidence.... Anything less and it can hardly be said that the accident arose out of the employment or that the employment in any measure contributed to the accident, (citations omitted)
Guidry v. Sline Industrial Painters, Inc., 418 So.2d 626 (La.1982) at page 633.
In his stated reasons for judgment awarding benefits to plaintiff, the trial judge said:
The facts in the instant case lend the following factors which could be pointed to as job related stressful circumstances which exceed ordinary nonemployment circumstances. Mr. Nix was almost sixty-five years of age, had a preexisting diabetic condition, but no record of any preexisting heart condition. On the day of his accident he was at the end of a period where he had been away from home for two days and one night and slept in a motel and of necessity, ate food to which he was not ordinarily custom. On the day of his death he was noted as. looking quite ill and not feeling well and did not eat at all. He was required to teach a safety seminar and was then in the process of driving to his office in the early part of the afternoon rush hour in a driving rainstorm. All of these activities were required for him to complete the job task he was assigned to at that time.
While these factors are essentially correct, the circumstances are much less strenuous when viewed in light of the testimony. The record indicates that Mr. Nix was away from home less than 24 hours. He drove to Houma Monday evening to avoid the possible necessity of driving in early morning fog on Tuesday. He had completed the seminar and was on his way back to the office in New Orleans at the time of his death. In the normal course of things, he would have been home for dinner. There is no evidence that staying overnight in a motel was stressful for Mr. Nix, but whether it was or not, it was not job-related. The company did not require Mr. Nix to stay over. He chose to do so for his own convenience.
There was testimony concerning weather conditions by two police officers. They said the ground was wet and there was either no rain or light rain falling. Neither officer placed Mr. Nix in a driving storm at the time of his death.
There is no evidence in the record that Mr. Nix was troubled by the food at motel restaurants. He was an experienced diabetic who knew how to handle the requirements of his diet. Moreover, he had the option to bring food with him for the overnight stay, if special meals had been necessary. But whether the food agreed with him or not, in this instance he ate at the motel for his own convenience, not because the company required it.
Mr. Nix’s job can hardly be called stressful in the normal meaning of the term. He was a safety expert who taught seminars *549 for company employees on the subject of defensive driving techniques. He lectured and used slides and movies. There was a certain amount of travel involved in the job, but the company provided him with an automobile and it scheduled his trips. At the time of his death Mr. Nix had been teaching these seminars for several years. On the day of his death Mr. Nix had an assistant to help him with his work.
There was testimony that on the day of the accident Mr. Nix looked ill and that he declined to eat lunch. There is no evidence in the record relating these events to his job. So far as the evidence shows, things could have been the same for him if he had stayed home that day.
The record indicates that Mr. Nix was active in his private life. He enjoyed golf and bowling. Two or three Saturdays out of every month he would drive' from La-Place to his daughter’s home in Sulphur, Louisiana, and spend the weekend. This is a drive of 175 miles and takes about 3V2 hours. Given these facts, it is inaccurate to say that Mr. Nix’s employment duties were any more strenuous than his nonem-ployment activities.
In the entire record, the fact most favorable to plaintiff is that Mr. Nix had his heart attack in a company car while on company business. Beyond this, the proof of causality is inadequate and unconvincing.
The legal standard to be applied when reviewing a court’s decision is set out in Gardner v. Allstate Insurance Company, 422 So.2d 1380 (La.App. 1st Cir.1982), cert. denied, 432 So.2d 265 (La.1983):
[T]he record of the proceeding must reveal a reasonable factual basis for the finding of the trial court, and a further determination that the finding is not “clearly wrong.”
422 So.2d at 1381.
In the case at bar there is only the slightest factual basis for the court’s finding. Further than that, we determine that the court was clearly wrong in awarding judgment to plaintiff. Accordingly, the de-cisión of the trial court is reversed and judgment is entered in favor of defendant, B.J. Hughes, Inc.
Costs are taxed to defendant.
REVERSED.